Filed 7/21/11

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| In re K. C., a Person Coming Under the Juvenile Court Law. | ) ) ) ) | |
| KINGS COUNTY HUMAN SERVICES AGENCY, | ) ) ) ) | S183320 |
| | ) | Ct.App. 5 F058395 |
| Plaintiff and Respondent, | ) ) | |
| v. | ) | Kings County Super. Ct. No. 08JD0075 |
| J.C., | ) ) ) | |
| Defendant and Appellant. | ) ) ) | |

The question before us in this dependency case is whether a father whose parental rights have been terminated (Welf. & Inst. Code, § 366.26, subd. (c)),**1** and who does not challenge that decision, has standing to appeal an order entered at the same hearing denying a petition by the dependent child's grandparents to have the child placed with them (§§ 361.3, 366.26, subd. (k), 388). We hold the father does not have standing to appeal the order concerning placement.

---

**1** All further statutory citations are to the Welfare and Institutions Code, except as noted.

# I. BACKGROUND

Only the question of standing is before us. We have no occasion to review the merits of the superior court's order denying the petition concerning placement (§ 388) or the judgment terminating parental rights (§ 366.26, subd. (c)). Accordingly, the facts underlying those rulings do not affect our decision, and we offer only the briefest summary of them.

K.C., the subject of this proceeding, is the youngest of eight children born to father, the appellant in this case, and to mother, who has not appealed. K.C. was born in September 2008. Five of his siblings survive. Another sibling died at birth, and the eldest, J.C., died in October 2008 at the age of 15 after jumping from a moving car driven by mother. In separate proceedings, the juvenile court in Tulare County has declared K.C.'s siblings to be dependents, terminated mother's and father's parental rights as to them, and placed the siblings with their paternal grandparents (grandparents).

Six weeks after J.C. died, K.C. was removed from mother's custody in Kings County, declared to be a dependent child (§ 300), and placed with a foster parent who wishes to adopt him. Grandparents asked respondent Kings County Human Services Agency (agency) to place K.C. in their home with his siblings. Although grandparents' home met the applicable licensing requirements, the agency denied the request based on a variety of concerns, including, among others, mother's and father's continuing access to grandparents' home, questions about grandparents' ability to care for a sixth child, and a suicide attempt in grandparents' home by J.C. in 2007. The Kings County Juvenile Court bypassed reunification services for both parents because of their failure to reunify with K.C.'s siblings (§ 361.5, subd. (b)(10)), as well as their history of drug and alcohol abuse (*id.*, subd. (b)(13)), and scheduled a hearing to select and implement a permanent plan for K.C. (§ 366.26).

Grandparents filed a petition to modify K.C.'s existing placement (§ 388) by placing him in their home. The juvenile court heard the matter at a contested hearing immediately preceding the selection and implementation hearing. At the hearing, the agency reiterated its previously expressed concerns about placing K.C. with grandparents and called witnesses to support its position. In opposition, grandparents called child welfare officials from Tulare County, who testified that K.C.'s siblings were doing well in grandparents' care, and the principal of the siblings' school, who expressed satisfaction with their academic progress. Father, who was transported from prison in custody to appear at the hearing, stated he believed K.C. should be placed with grandparents. Neither father nor his counsel, however, offered any argument against terminating father's parental rights. Mother, who was incarcerated and awaiting deportation, did not appear.

At the conclusion of the hearing, the juvenile court denied grandparents' petition to modify K.C.'s placement, selected adoption as the permanent plan, and terminated mother's and father's parental rights. Father filed a notice of appeal from both the order denying grandparents' petition and the judgment terminating his rights. In the ensuing appeal, however, father did not argue the court erred or abused its discretion in terminating his rights. Instead, father limited his argument to the question of K.C.'s placement and contended that, should the Court of Appeal reverse the placement order, the court should also reverse the judgment terminating parental rights to restore the parties to their prior positions. (Cf. *In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1061-1062; *In re H.G.* (2006) 146 Cal.App.4th 1, 18.) The Court of Appeal, reasoning that father was not aggrieved by the placement decision because it could not be shown to affect his parental rights, dismissed father's appeal. The court also dismissed grandparents' appeal as untimely. We granted father's petition for review.

3

## II. DISCUSSION

The issue before us is one of standing, not appealability. Orders denying petitions under section 388 to modify prior orders of the juvenile court, such as the grandparents' petition in this case to modify the dependent child's placement, are appealable under section 395. Section 395 expressly provides that any order subsequent to the judgment under section 300 declaring a child to be a dependent "may be appealed as an order after judgment." (§ 395, subd. (a)(1); see *In re Aaron R.* (2005) 130 Cal.App.4th 697, 702-703.)

Not every party has standing to appeal every appealable order. Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. (E.g., *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 948; cf. Code Civ. Proc., § 902 ["Any party aggrieved may appeal . . . ."].) An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision. (*In re L.Y.L.*, *supra*, at p. 948; see *County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737; *In re Estate of Colton* (1912) 164 Cal. 1, 5.) These rules apply with full force to appeals from dependency proceedings. (E.g., *In re L.Y.L.*, *supra*, at p. 948.)

To determine whether father is aggrieved by the juvenile court's order declining to place K.C. with grandparents, we must therefore precisely identify father's interest in the matter. All parents, unless and until their parental rights are terminated, have an interest in their children's "companionship, care, custody and management . . . ." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 306.) This interest is a "compelling one, ranked among the most basic of civil rights." (*Ibid.*) While the overarching goal of the dependency law is to safeguard the welfare of dependent children and to promote their best interests (e.g., *In re Nolan W.* (2009) 45 Cal.4th 1217, 1228; *In re A.M.* (2008) 164 Cal.App.4th 914, 925), the law's

4

first priority when dependency proceedings are commenced is to preserve family relationships, if possible. (*In re Nolan W.*, *supra*, at p. 1228.) To this end, the law requires the juvenile court to provide reunification services unless a statutory exception applies. (See *ibid.*; § 361.5.) In contrast, after reunification services are terminated or bypassed (as in this case), "the parents' interest in the care, custody and companionship of the child [is] no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability . . . .' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317, quoting *In re Marilyn H.*, *supra*, at p. 309.) For this reason, the decision to terminate or bypass reunification services ordinarily constitutes a sufficient basis for terminating parental rights. (§ 366.26, subd. (c)(1).) A few statutory exceptions to this rule permit the juvenile court not to terminate parental rights when compelling reasons show termination would be detrimental to the child. (*Id.*, subd. (c)(1) (B)(i)-(vi).) But father did not argue below, and does not argue now, that any such exception applies. Indeed, as noted, father does not contend the order terminating his parental rights was improper in any respect. That he has no remaining, legally cognizable interest in K.C.'s affairs, including his placement, logically follows.

For this reason, the present case is distinguishable from the cases on which father primarily relies, *In re H.G.*, *supra*, 146 Cal.App.4th 1, and *In re Esperanza C.*, *supra*, 165 Cal.App.4th 1042. In both cases, the Court of Appeal concluded that parents whose rights had been terminated were aggrieved by, and thus *did* have standing to appeal, pretermination orders concerning their children's placement, because the possibility existed that reversing those orders might lead the juvenile court not to terminate parental rights. These cases do not assist father because he makes no such argument.

5

*In re H.G.*, *supra*, 146 Cal.App.4th 1, was an appeal by parents of an order removing their daughter from her grandparents' custody (see § 387)**2** and a judgment terminating parental rights. The Court of Appeal reversed the order taking the child from her grandparents because the juvenile court had failed to comply with section 361.3, which mandates preferential consideration of a request for placement with relatives of the dependent child. (*In re H.G.*, *supra*, at pp. 10-11; see § 361.3, subd. (a).) Because the court failed properly to consider the request for placement with relatives, the order terminating parental rights was at least premature and possibly erroneous: The placement of a dependent child with relatives can, under certain circumstances, make the termination of parental rights unnecessary. (§ 366.26, subd. (c)(1)(A).)**3** Because the propriety of terminating parental rights depended partly on the placement decision, the order removing the child from her grandparents' custody affected the mother's interests sufficiently to confer upon her standing to appeal that order as well. As the Court of Appeal explained, "a placement decision under section 387 has the potential to alter the court's determination of the child's best interests and the appropriate permanency

---

**2**     Section 387 governs proposed orders that would have the effect of imposing a more restrictive placement, i.e., by "removing a child from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private or county institution . . . ." (Cf. § 388 [concerning petitions to modify juvenile court orders generally].)

**3**     The court need not terminate parental rights when "[t]he child is living with a relative who is unable or unwilling to adopt the child because of circumstances that do not include an unwillingness to accept legal or financial responsibility for the child, but who is willing and capable of providing the child with a stable and permanent environment through legal guardianship, and the removal of the child from the custody of his or her relative would be detrimental to the emotional well-being of the child. . . ." (§ 366.26, subd. (c)(1)(A).)

plan for that child, and thus may affect a parent's interest in his or her legal status with respect to the child." (*In re H.G.*, *supra*, at p. 10.)

*In re Esperanza C.*, *supra*, 165 Cal.App.4th 1042, extended the reasoning of *In H.G.*, *supra*, 146 Cal.App.4th 1, to the procedural mechanism employed in the case before us, namely, a petition under section 388 to modify an existing order concerning placement. A mother whose parental rights had been terminated sought to appeal an order, entered immediately before termination, denying a relative's petition for placement under section 388. Adopting the reasoning of *In re H.G.*, the court concluded the mother did have standing because the resolution of the placement issue had the potential to alter the decision to terminate parental rights. (*In re Esperanza C.*, *supra*, at p. 1054.) The court thus reversed both the order concerning placement and the judgment terminating parental rights. (*Id.*, at p. 1062.)

From these decisions we derive the following rule: A parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights. This rule does not support father's claim of standing to appeal because he did not contest the termination of his parental rights in the juvenile court. By thus acquiescing in the termination of his rights, he relinquished the only interest in K.C. that could render him aggrieved by the juvenile court's order declining to place the child with grandparents.[4]

---

**4**　On appeal, father argued perfunctorily that, if the placement order were reversed, the court should also reverse the order terminating parental rights under the authority of *In re H.G.*, *supra*, 146 Cal.App.4th 1 and *In re Esperanza C.*, *supra*, 165 Cal.App.4th 1042. Nothing in those decisions suggests, however, that

*(footnote continued on next page)*

Arguing against this conclusion, father suggests the court's placement order touches upon interests other than his interest in avoiding the termination of his parental rights. First, he argues he has standing to appeal simply because he is a party of record and because standing to appeal is construed liberally and doubts resolved in its favor. (E.g., *In re L.Y.L.*, *supra*, 101 Cal.App.4th 942, 948.) These very general principles, however, do not displace the fundamental rule that only a person aggrieved by a decision may appeal. (See *ibid.*; see also *County of Alameda v. Carleson*, *supra*, 5 Cal.3d 730, 737 [only person aggrieved by decision may appeal]; *In re Estate of Colton*, *supra*, 164 Cal. 1, 5 [same]; Code Civ. Proc., § 902 [same].)

Next, father argues he has standing to appeal the order denying placement with grandparents (i.e., his own parents) because, if the order were reversed and the grandparents were eventually to adopt K.C., father would in some sense become K.C.'s legal sibling and thus acquire a new set of rights connecting him with K.C. We find no merit in the argument, because the rights father posits are potentially inconsistent with the judgment terminating his parental rights. For example, while the dependency law does permit postadoption contact between siblings (§ 366.29), we doubt the Legislature intended the term "sibling" to include a parent whose rights as to a child have been terminated and who may appropriately be ordered not to have any contact with the child. Similar objections apply to father's additional arguments that his status as a "relative" would entitle him to preference as a foster parent if K.C. once again entered the foster care

---

*(footnote continued from previous page)*

a reviewing court must reverse an order terminating the rights of a parent who did not oppose that order when it was entered.

system (see Fam. Code, § 7950, subd. (a)(1)), and to enjoy certain rights as a "relative" in the event a guardianship were ever proposed for K.C. (see Prob. Code, § 1510).

Finally, father contends he has standing to appeal because he joined in grandparents' motion for placement and took an active part in litigating the motion in the juvenile court. However, "the mere fact that a parent takes a position on a matter at issue in a juvenile dependency case that affects his or her child does not constitute a sufficient reason to establish standing to challenge an adverse ruling on it." (*In re Carissa G.* (1999) 76 Cal.App.4th 731, 736 [mother lacked standing to appeal dependency petition].) The decision in *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, on which father relies, is not to the contrary. Although the father in that case was held to lack standing to appeal, the court nevertheless permitted him to offer argument in support of an appellant who did have standing because the father had "extensively litigated the issue below . . . ." (*Id.*, at p. 1035.) What the father in *Cesar V.* appears to have won was not standing to appeal, but a status loosely akin to that of amicus curiae. Here, in contrast, there is no appeal on the merits in which father might participate in a similar capacity. The only parties with standing to appeal — grandparents —did not file a timely notice of appeal.

In conclusion, father has not shown that he is aggrieved by the juvenile court's order denying grandparents' motion concerning placement. That the Court of Appeal properly dismissed his appeal for want of standing necessarily follows.

9

## III. DISPOSITION

The judgment of the Court of Appeal is affirmed.

WERDEGAR, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
KENNARD, J.
BAXTER, J.
CHIN, J.
CORRIGAN, J.
GILBERT, J.*

---

\*      Presiding Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re K.C.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 184 Cal.App.4th 120
**Rehearing Granted**

_____

**Opinion No.** S183320
**Date Filed:** July 21, 2011

_____

**Court:** Superior
**County:** Kings
**Judge:** George Orndoff

_____

**Counsel:**

Monica Vogelmann, under appointment by the Supreme Court, for Defendant and Appellant.

Peter D. Moock and Colleen Carlson, County Counsel, and Johannah Hartley, Deputy County Counsel, for Plaintiff and Respondent.

Jennifer B. Henning for California State Association of Counties as Amicus Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Monica Vogelmann
P.O. Box 1034
Cooperstown, NY  13326
(607) 547-7058

Johannah Hartley
Deputy County Counsel
County Government Center
1400 West Lacey Blvd., Law Bldg. No. 4
Hanford, CA  93230
(559) 582-3211, ext. 2445