Filed 4/24/13  In re A.H. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re A. H., a Person Coming Under the Juvenile Court Law. | B240300<br><br>(Los Angeles County<br>Super. Ct. No. CK77960) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>A. A.,<br><br>    Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Albert Garcia, Juvenile Court Referee.  Affirmed.

Nancy Rabin Brucker, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

_____

# INTRODUCTION

A. A. (Mother) is the birth mother of A. H. (the child), and the daughter of Nichole R. (maternal grandmother). On March 14, 2012, at a Welfare and Institutions Code section 366.26 hearing,[1] the juvenile court terminated Mother's parental rights. At the same hearing, the court denied the maternal grandmother's petition under section 388 to have the child placed with her. Mother appeals from both orders of the juvenile court. She contends (1) that she has standing to challenge the denial of the maternal grandmother's section 388 petition, (2) that the juvenile court erred by failing to provide the maternal grandmother with a full evidentiary hearing on the section 388 motion, and (3) that the decision to terminate her parental rights should be reconsidered de novo on remand. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

In 2009, Mother, then 16, lived with the maternal grandmother. In June 2009, the maternal grandmother left for an urgent trip to Texas. She took the year old child with her, and left Mother at home with Mother's 14-year-old godsister. During the three day trip, Mother did not maintain communication with the maternal grandmother, failed to do her chores, and rented movies without permission. When the maternal grandmother returned on June 19, 2009, she gave the child to Mother to change and bathe. Shortly thereafter, the maternal grandmother questioned Mother about where she had been for the past three days. Mother started giving excuses, and the maternal grandmother began hitting her. Mother then left the apartment and ran away. The maternal grandmother found the

---

[1]    All further statutory citations are to the Welfare and Institutions Code, unless otherwise stated.

2

child sitting in a bathtub partially filled with water. The maternal grandmother finished bathing the child, dressed her, fed her, and laid her to sleep.

On June 26, 2009, the Department of Children and Family Services (DCFS) filed a section 300 petition on behalf of the child, alleging that Mother had placed the child in a detrimental and endangering situation when she left her in the bathtub without adult supervision. In the petition, the social worker reported that Mother had stated she was beaten by the maternal grandmother, and that Mother feared the maternal grandmother would gain custody of the child. The social worker noted that DCFS's records indicated the maternal grandmother was a dependent of the juvenile court as a child, and had Mother at the age of 15.

At a July 14, 2009 hearing, the juvenile court sustained the allegation in the section 300 petition that Mother had placed the child in a detrimental and endangering situation. The court set the matter for a dispositional hearing. At the dispositional hearing, the court declared the child a dependent of the juvenile court under section 300, subdivision (b). The court ordered the child removed from Mother's custody and placed in a foster home, ordered family reunification services, and granted the maternal grandmother monitored visits with the child.

At the September 17, 2009 progress hearing, the social worker reported that Mother and child had been placed with a foster mother. At the same hearing, the juvenile court noted the Evidence Code section 730 evaluation for the maternal grandmother recommended that she receive psychiatric treatment for her bipolar disorder.

In the January 12, 2010 status review report, the social worker reported that Mother was not complying with the family reunification case plan. Mother also had told the social worker she did not want to return to the maternal grandmother's home. In the April 22, 2010 interim review report, the social worker reported that

3

Mother had informed the social worker she did not want to return to the maternal grandmother's home at that time.

On May 13, 2010, Mother filed a section 388 petition requesting the child be returned to her custody. The juvenile court denied the petition, finding it would not be in the best interest of the child.

On August 5, 2010, the maternal grandmother had a conflict with the social worker related to her monitored visits with the child. That day, Mother told the social worker she wanted the visits with the maternal grandmother stopped due to "the issues that the maternal grandmother has been causing and the recent incident that potentially put the current placement at risk." At the August 11, 2010 hearing, the juvenile court granted monitored visits for the maternal grandmother with a DCFS-approved monitor.

In the December 17, 2010 status review report, the social worker reported that Mother disclosed she had been arrested for petty theft in October 2010. On January 12, 2011, Mother called the social worker, stating she had run away after a verbal altercation with her foster mother. Mother's probation officer informed the social worker that Mother had not shown up for her delinquency hearing and that an arrest warrant had been issued for her.

At the February 23, 2011 section 366.22 hearing, the juvenile court found that Mother was in partial compliance with the case plan, and terminated family reunification services. The court granted DCFS discretion to liberalize the maternal grandmother's visits. It also ordered DCFS to make best efforts to place the child in an adoptive home.

In the April 20, 2011 interim review report, the social worker reported that the child had been placed in a foster home with Ms. S., who was interested in adopting her. The social worker noted the child had a bond with Mother and the maternal grandmother, the latter of whom had weekly unmonitored visits. The

4

social worker also noted that several family members, including the maternal grandmother, were interested in providing a permanent home for the child. The maternal grandmother lived in a two bedroom residence, attended community college, and was receiving Social Security disability benefits for mental health issues. Because of her criminal history, which included felony convictions for possessing a narcotic/controlled substance and burglary, the maternal grandmother would require exemptions for placement of the child.

Over the next few months, the social worker reported that Mother continued to run away. The social worker also reported that the maternal grandmother had been denied home approval pursuant to the Adoptions and Safe Family Act (AFSA), but that the maternal grandmother intended to appeal.

At the September 14, 2011 review of permanent plan hearing, the juvenile court found that the planned permanent living arrangement with Ms. S. and the specific goal of adoption were appropriate. In the October 20, 2011 section 366.26 report, the social worker reported the child had a strong bond and attachment to Ms. S., calling her "mommy."

On December 14, 2011, the maternal grandmother filed a section 388 petition, requesting the court reconsider placing the child in her home as Mother's parental rights were going to be terminated. In the petition, the maternal grandmother stated she had filed a grievance related to the denial of home approval with DCFS on August 18, 2011, but had not received a response within the specified time period. She complained that the social worker had failed to report she was awaiting her appeal, and that she had been granted an exemption for her criminal background on June 8, 2011. The court set a hearing on the maternal grandmother's section 388 petition for March 14, 2012.

In the March 12, 2012 section 388 response, DCFS recommended that the juvenile court deny the maternal grandmother's section 388 petition. In the

response, the social worker reported that the maternal grandmother's appeal of her AFSA denial had been heard at the management level, and had been scheduled to be heard at the second management level. The social worker noted that the child had never been placed with the maternal grandmother. The social worker stated she did not observe a bond between the maternal grandmother and the child since the child was placed with Ms. S. The social worker recounted several visits by the maternal grandmother during which the child appeared unhappy or uncomfortable. The maternal grandmother "would be late returning the child and the child would be wet, soiled and very tired." After one particular visit, the child reported that she had been bitten by a dog, but the maternal grandmother did not mention the incident to the social worker. The social worker also reported that the maternal grandmother recently had been in a car accident and was without a car for several weeks. Without informing DCFS, the maternal grandmother had friends and neighbors transport the child during the visits. After Ms. S. informed DCFS, the social worker had to remind the maternal grandmother that anyone transporting the child was required to undergo a criminal background check. As a result, DCFS changed the maternal grandmother's visits from unmonitored to monitored.

In the March 14, 2012 last minute information for the court, the social worker reported that during a March 9, 2012 visit, the maternal grandmother had made inappropriate remarks to the child, such as saying that the child's foster family was not her family and that Ms. S. was not her mother.

On March 14, 2012, the juvenile court held a section 366.26 hearing. When reminded of the maternal grandmother's pending section 388 petition, the court indicated it would rule on the petition. The juvenile court referee noted that he had read the documents, and admitted the March 12, 2012 section 388 response and the March 14, 2012 last minute information. Mother joined in the maternal grandmother's section 388 petition. The child's counsel joined DCFS's

6

recommendation to deny the section 388 petition. The juvenile court asked the maternal grandmother if she had anything to say. The maternal grandmother said, "Yes." The juvenile court stated, "Keep it short. You can come up." The maternal grandmother said:

> "I know that I'm probably at a long shot because of what I've been told, the past history here in this courthouse and because of the 2009 petition that my daughter filed against me. However, I have done everything that the court asked me to do as far as rehabilitating and trying to reunify with both children. I am still here for my daughter, and I believe that the Department has been purposely sabotaging me as far as visits with my granddaughter and, you know, penalizing me because of the 388 that I filed, trying to get my granddaughter to return back home. I've never been a danger. I never did anything to my granddaughter. She's closely bonded to me. I have a therapist calling me. They are now saying she's seeing a therapist, this three-year-old child, who was a happy child. She had never had any problems. They are claiming she has anger outbursts because of the sporadic visits; that she sees me and they cancel visits. They've used me to try to find my daughter, accuse me of having my daughter live with me when she had never been to my home. They then tried to allow her to visit with the child in my home.

> "And, recently, I was -- someone hit my car. I had been on unmonitored visits for over a year, for eight hours every Friday. Then, because of it, being hit by someone else, which I didn't have any control over, I asked to be accommodated, to have the pickup and drop-off place somewhere more accessible where I can catch a bus. They refused to do that. They, consequently, cancelled my -- terminated my unmonitored visits and put me on monitored -- back on monitored visits for one hour every other week, when I was seeing her every week for eight hours. I did nothing to, you know, warrant this. I feel penalized because I did nothing. I tried to contact the worker, the F.F.A. [foster family agency] worker, to try to resolve the situation so that my transportation, you know -- we could continue with the visits as they were being done and to no avail. I got no help. As of January, my visits were, like I said, changed from the unmonitored to the monitored, which I felt was totally unfair. The child is very bonded to me. She knows who I am. She has a good relationship

7

with me.  I'm willing to do whatever, you know, else I need to do to prove that I'm not a danger to my granddaughter and so that my family is not split up anymore and goes through any more of these bad cycles that it already has been.  I was a minor when my daughter was first initially taken from me.  I was [the] exact . . . same age she was when she had my granddaughter.  And a lot of this is stuff that is being repeated.  But then I didn't really have a chance and didn't know too much about the court system.  Now I'm more aware, and it seems, like, kind of the same thing is going on with my daughter even though she failed to do her part to get the child back in her custody.  I'm just trying to get my family back together so that we can go on and grow and become healthy as we should be.  I don't want to take up too much of your time.  So that's about it."

The juvenile court asked the maternal grandmother, "Is that it?"  The maternal grandmother replied, "Yes, sir."  Later, the maternal grandmother stated, "Sorry.  I have one last thing.  I did get a grievance hearing last week on the 8th, which I filed for . . . way back in August of last year, and I just finally got the grievance.  The gentleman said it would take two weeks for the response to that hearing that I had."  The court denied the section 388 motion, finding that the maternal grandmother had not met her burden of showing that there had been a change of circumstances.

The juvenile court then held the section 366.26 hearing on terminating Mother's parental rights.  The court admitted several DCFS reports and heard from the parties.  Mother objected.  The child's counsel joined with DCFS in asking that parental rights be terminated.  The court terminated parental rights.  Mother filed a timely appeal.

## DISCUSSION

On appeal, Mother contends (1) she has standing to challenge the denial of the maternal grandmother's section 388 petition because she was aggrieved by the decision; (2) the juvenile court did not grant the maternal grandmother a full

8

evidentiary hearing, as the court failed to allow the grandmother to testify under oath, to inquire whether the grandmother had brought witnesses, or to allow her an opportunity to cross-examine the social worker who prepared the DCFS reports; and (3) because the matter must be remanded on the maternal grandmother's section 388 petition, the order terminating her parental rights must also be reconsidered de novo by the juvenile court on remand.

  A.  Order Denying Maternal Grandmother's Section 388 Petition

  In *In re K. C.* (2011) 52 Cal.4th 231, the California Supreme Court noted that "only a person aggrieved by a decision may appeal." (*Id*. at p. 236.) "An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*Ibid*.) The court held that a parent whose parental rights have been terminated and who does not challenge that termination lacked standing to appeal an order denying placement of the child with a grandparent. (*Id*. at p. 234.) The court stated: "A parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights." (*Id*. at p. 238.) Thus, in *In re Esperanza C*. (2008) 165 Cal.App.4th 1042, the appellate court held that the Mother had standing to appeal an order denying a grandparent's section 388 petition to place the child with the grandparent, which was entered prior to the order terminating her parental rights. The appellate court reasoned that "placement of a child with a relative has the potential to alter the juvenile court's determination of the child's best interests and the appropriate permanency plan for that child, and may affect a parent's interest in his or her legal status with respect to the child." (*Id*. at p. 1054.)

Here, Mother objected to the termination of her parental rights by the juvenile court. In addition, the reversal of the placement order could advance Mother's arguments against terminating her parental rights, as she might have retained her parental rights had the maternal grandmother been granted custody and decided to become the legal guardian of the child, instead of adopting her. Whether the trial court would have granted custody, or whether the maternal grandmother would have sought legal guardianship is not relevant, as "[w]e liberally construe the issue of standing and resolve doubts in favor of the right to appeal." (*In re Esperanza C.*, *supra*, 165 Cal.App.4th at p. 1053, citing *Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 540.) In short, Mother has standing to challenge the denial of the maternal grandmother's section 388 petition.

At the hearing on the maternal grandmother's section 388 petition, the juvenile court stated it had read the petition. The court admitted the responsive documents filed by DCFS. The court heard from the interested parties, including the maternal grandmother. The grandmother never indicated she had additional documents she sought to have admitted, or had additional witnesses whose testimony she wished to present; nor did she indicate a desire to cross-examine the social worker who prepared the DCFS reports. Moreover, it is unclear how testifying under oath would have assisted the maternal grandmother, as the denial of the section 388 petition was not based upon credibility issues. On this record, the maternal grandmother was not denied her right to a full evidentiary hearing on her section 388 petition. Even had the court erred, we would find any error harmless, as the court did not abuse its discretion in determining that the maternal grandmother had failed to demonstrate changed circumstances. In short, the juvenile court did not err in denying the section 388 petition.

10

B.     Order Terminating Parental Rights

Mother also contends the order terminating her parental rights should be reversed, as the juvenile court erred in denying the maternal grandmother's section 388 petition.  Because we conclude the juvenile court did not err in denying the maternal grandmother's section 388 petition, the order terminating parental rights is affirmed.

## DISPOSITION

The orders are affirmed.


## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.



MANELLA, J.


We concur:




WILLHITE, Acting P. J.




SUZUKAWA, J.