Filed 10/10/13  In re Destiny S. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re DESTINY S., a Person Coming Under the Juvenile Court Law. | B245240 |
| | (Los Angeles Super. Ct. No. CK89259) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. BRITNEY S., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County,

D. Zeke Zeidler, Judge.  Dismissed.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Kim Nemoy, Principal Deputy County Counsel, for Respondent Los Angeles County Department of Children and Family Services.

Appellant Britney S. ("Mother") appeals from the juvenile dependency court's order granting the father's Welfare and Institutions Code[1] section 388 petition to remove the minor Destiny S. from her placement in the maternal grandmother's home. As we shall explain, because Mother's reunification services have been terminated and because Mother has not shown how the court's order injures her interests, she has failed to demonstrate that she has standing to challenge the order. Accordingly, we dismiss the appeal.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

The minor in this case, four-year-old Destiny S. first came to the attention of the Department of Children and Family Services ("the Department") because Mother had tested positive for drugs at the time the baby was born in June 2008. Although the Department initiated a voluntary case plan, the matter was closed after five months when the family moved out of state. Thereafter, in August 2011, the Department received new information that the family had returned to the state and that Mother was abusing drugs, and neglecting the minor. The child had been left in the care of the maternal grandmother, Tabitha S. ("Grandmother").

The Department initiated dependency proceedings, and the child was detained with Grandmother. When Mother learned that the child had been detained, she forcibly abducted the child from Grandmother's house and in the process assaulted Grandmother. The Department social worker convinced Mother to bring the child to the Department office. When interviewed, Mother denied the allegations, and told the social worker that

---

[1] All statutory references are to the Welfare and Institutions Code section unless otherwise indicated.

[2] The factual background described here is limited to those facts that are relevant to the issues of standing.

she and Grandmother had a strained relationship—she believed that Grandmother had "conspired" against her so that Grandmother could keep the child.[3]

On August 9, 2011, the Department filed a dependency petition alleging that Destiny was a person described under section 300, subdivision (b) based on various allegations of neglect and Mother's drug use.[4] The court conducted the detention

---

[3]     Grandmother had previously made accusations against the minor's father, Christopher B. ("Father"), claiming that he acted in a sexually inappropriate manner with Mother's minor sister. The allegations were investigated and deemed unfounded.

[4]     The section 300 petition alleged:

"B-1  [¶]  In July and August 2011, 3 year old Destiny [S.] suffered an ear infection and ongoing pain to the child's ear. The child's mother, Britney [S.] failed to obtain necessary medical treatment for the child's condition. Such medical neglect of the child by the mother endangers the child's physical health and safety and places the child at risk of physical harm, damage, and danger.

"B-2  [¶]  The child Destiny [S.'s] mother, Britney [S.], has a history of illicit drug abuse including methamphetamine and is a current user of marijuana and ecstasy, which renders mother incapable of providing regular care of the child. On 8/4/11, the mother was under the influence of illicit drugs while the child was in the mother's care and supervision. Mother's illicit drug abuse endangers the child's physical health and safety and places the child at risk of physical harm, damage, and danger.

"B-3  [¶]  On 8/4/11, the child Destiny [S.'s] mother, Britney [S.] engaged in a violent altercation with the maternal grandmother, Tabitha [S.] in which mother struck the grandmother's body with mother's fist and pushed grandmother to the floor in the child's presence. Such violent conduct by the mother against the maternal grandmother endangers the child's physical health and safety and places the child at risk of physical harm and damage.

"B-4  [¶]  On 8/4/11, the child Destiny [S.'s] mother, Britney [S.] established a detrimental and endangering situation in that the mother abducted the children from the maternal grandmother, Tabitha [S.] following the child's detention. Such a detrimental and endangering situation established for the child by the mother endangers the child's physical and emotional health and safety and places the child at risk of physical harm, and damage.

hearing, and the child was ordered detained with Grandmother. Father was appointed counsel. Father had informed the Department that he was not stable and would not be a suitable caretaker for the child, but wanted to assume custody in the future when he was able to care for her. Mother denied the allegations against her and did not express an interest in the child's well being and told Grandmother that she did not want to visit the child. She told the Department that she "wants nothing to do with Destiny's grandmother, even if that means not seeing Destiny."

On October 19, 2011, at the jurisdiction and disposition hearing, Mother failed to appear. The court found Father to be Destiny's presumed father, declared Destiny a dependent pursuant to section 300, subdivision (b), and removed the child from parental custody for specific placement with Grandmother.

The court ordered the Department to provide family reunification to the parents. Father was ordered to do education and individual counseling to address parental responsibilities and to get stable housing. He was also permitted unmonitored visitation with the child. Mother was ordered to complete parenting education, drug rehabilitation and weekly random on-demand drug testing and individual counseling. Mother was also ordered to participate in anger management counseling.

On April 18, 2012, the court conducted a six-month review hearing. Mother failed to appear and did not give her attorney any direction on how to proceed. Destiny remained as placed with Grandmother.

Although the child had appeared to adapt to the care of Grandmother, the child also showed symptoms of a psychotic disorder, heard voices, tried to harm herself and displayed inappropriate sexualized behavior. The child was placed on medication and attended therapy.

---

"B-5  [¶]  On 8/2/11, the child Destiny [S.'s] mother, Britney S. left the child with the maternal grandmother Tabitha S. and failed to make an appropriate plan for the child's care and supervision. The mother's whereabouts was unknown to the maternal grandmother. The inappropriate plan for the child's care and supervision established for the child by the mother endangers the child's physical health and safety and places the child at risk of physical harm, damage, and danger."

4

Since the child had been detained, Mother had not complied with any aspect of the case plan. Mother expressed no interest in having the child returned to her and refused to participate in reunification. She had visited the child only three times. Father was in partial compliance, and according to his therapist, was laying the foundation for reunification. Father had no in-person visits with the minor and instead contacted her by telephone. At the April 2012 review hearing the court terminated Mother's reunification services and continued services for Father.

Father's visits with the child were delayed after the child's therapist reported that Father may have sexually abused the minor. Father's counsel expressed a concern that Grandmother was interfering with Father's reunification. The court ordered the Department to create a visitation schedule for Father, to arrange for someone other than Grandmother to monitor the visits, and to set up interactive parenting classes for Father and the child. Father asserted that Grandmother was exaggerating the child's behaviors and wanted to ensure the child was not placed on medication solely based on Grandmother's assertions. Father's counsel also expressed a concern that Grandmother was influencing the child's therapist.

Grandmother submitted a letter to the court on July 26, 2012. Grandmother stated that Destiny had many special needs, mental disorders and that Grandmother was her only advocate. She claimed the Department social worker had lied about Grandmother and Destiny. Grandmother requested a new social worker. Though a new worker was assigned, Grandmother believed that she was on a "black list," because her telephone calls were not returned, and that the Department had made false statements about her. Grandmother claimed that Department caseworkers and Destiny's attorney were not advocating for the child's interests in order to retaliate against Grandmother.

Grandmother maintained that the child's behaviors had deteriorated after visits with Father. She asked the court to end Father's visitation, and the interactive parenting class.

On September 24, 2012, Grandmother filed a request under section 388 to have Father's visits terminated because of the allegedly negative impact the visits had on the minor's behavior and emotional and mental state.

As of the 12-month review hearing in early October 2012, the child remained placed with Grandmother. The child had not visited with Father since July 2012. Father's participation in services was unconfirmed. The Department indicated that Destiny was receiving therapy and treatment. She was diagnosed with Post-Traumatic Stress Disorder, Bi-Polar Disorder, and Adjustment Disorder as a result of sexual abuse and neglect as a child. The child's therapist, reported that the child was not doing well. However, Destiny's psychiatrist stated there were many reasons the child could be behaving strangely, which may or may not pertain to visits with Father. The timing of the child's behaviors did not correlate to visits with Father. Nonetheless, it was recommended that Father's visits be suspended pending further assessment of the child. The Department's review report also indicated that the investigation on the referrals generated in April and May 2012 alleging general neglect and sexual abuse by Father had been closed as inconclusive.

On October 4, 2012, Father filed a section 388 petition, requesting that Destiny be removed from Grandmother's home, stating she continued to falsely accuse him of sexually abusing Destiny, blamed the child's maladaptive behaviors on visits with him even though he had very few visits and none for a period of time. Father claimed that Grandmother appeared intent on inhibiting family reunification.

The court set the matter for trial on Father's section 388 petition to have the child replaced, Grandmother's petition to terminate Father's visits, and whether to terminate Father's reunification services. The court granted Grandmother de facto parent status and in the interim suspended Father's visits.

The Department submitted a response to Father and Grandmother's petitions. The Department had reported that Destiny's psychiatrist called and asked to be removed from the case because of Grandmother's interference and refusal to comply with requests.

The Department further indicated that it conducted a meeting with the minor's psychiatrist, therapist, the child's attorney, and the supervising attorney to address concerns about Grandmother's inappropriate behavior with the treatment providers by discussing the case constantly and negatively in front of the child and thwarting family reunification with Father. The consensus of the treatment team was that Destiny should be removed from Grandmother's home. It was unclear whether the child was ever sexually abused and timing of the child's psychotic episodes and regression did not correlate with Father's visits. Destiny's psychiatrist believed Grandmother was paranoid. As a result, the Department submitted a referral to the Department of Mental Health for a psychological assessment of the child to identify the best possible home for the child given her needs and behaviors. The Department also recommended that the Father's reunification services continue.

On November 5, 2012, the court conducted the proceedings on both section 388 petitions. Mother was not present at the hearing; her attorney appeared on her behalf. Although initially indicating that counsel had no direction from his client on the matter, after Grandmother presented Mother's attorney with a letter from Mother, Mother's counsel asked the court to deny Father's section 388 petition. The court heard from Grandmother, who stated that she wanted Father's visits terminated because of the child's regressive behaviors.

The court considered the petitions and responses, as well as argument from counsel. Destiny's attorney and the Department supported Father's 388 petition. The court denied grandmother's section 388 petition, granted Father's request, and modified the prior placement order to a general suitable placement order. The court gave the Department the discretion to place the child in an appropriate foster home. The court ordered monitored visits for the Grandmother. The court also ordered additional services for Father, including visitation.

7

Mother filed an appeal.[5]

## *DISCUSSION*

Mother claims the juvenile dependency court erred when it granted Father's section 388 petition to remove Destiny from her placement with Grandmother. Specifically she asserts that the court erred in removing the child in absence of the Department filing a section 387 petition and alternatively that the court abused its discretion in granting the Father's section 388 petition. We reject these claims because Mother has failed to demonstrate that she has standing to assert these challenges.

The threshold question we must determine is not whether the court used the proper procedural vehicle to remove the child from Grandmother's home or whether the court properly granted Father's section 388 petition, but instead whether Mother has standing to makes these arguments. "'[W]hether one has standing in a particular case generally revolves around the question whether that person has rights that may suffer some injury, actual or threatened.' [Citation.]" (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1034-1035.) "To be aggrieved, a party must have a legally cognizable immediate and substantial interest which is injuriously affected by the court's decision. A nominal interest or remote consequence of the ruling does not satisfy this requirement." (*In re Carissa G.* (1999) 76 Cal.App.4th 731,734.) Thus, a parent in a juvenile dependency proceeding may not raise claims of error on appeal unless the error affected the parent's "own rights." (*In re Jasmine J.* (1996) 46 Cal.App.4th 1802, 1806, superseded by statute on other grounds as recognized in *In re Asia L.* (2003) 107 Cal.App.4th 498, 514.)

In *Cesar V. v. Superior Court,* the appellate court concluded that a father, whose reunification services had been terminated, lacked standing to appeal the dependency court's order denying a request for placement of the minors with the grandmother. The court reasoned that "in light of his stipulation to terminate reunification services, we cannot see how the denial of placement with [the grandmother] affects his interest in

---

5      Grandmother also filed a separate appeal in this matter.  However, on March 27, 2013, this court dismissed Grandmother's appeal because she was in default under the rules of court.

8

reunification with the children. It does not preclude Cesar from presenting any evidence about the children's best interests or their relationship with him." (*Cesar V. v. Superior Court, supra,* 91 Cal.App.4th at p. 1035.)

Thereafter, in *In re K.C.* (2011) 52 Cal.4th 231, the Supreme Court examined the issue of a parent's standing to challenge a placement order in the context where parental rights have been terminated. In *K.C.*, the Court held that the father had no standing to appeal an order denying a petition by the dependent child's grandparents to have the child placed with them because the father did not contest the termination of his parental rights in the juvenile court. (*Id.* at p. 238.) "By thus acquiescing in the termination of his rights, he relinquished the only interest in K.C. that could render him aggrieved by the juvenile court's order declining to place the child with grandparents." (*Ibid.,* fn. omitted.) The Court in *K.C.* further rejected the father's other argument that he had standing to appeal the placement order because it "touches upon interests other than his interest in avoiding the termination of his parental rights." (*Ibid.*)

In reaching its conclusion, the Supreme Court distinguished *In re H.G.* (2006) 146 Cal.App.4th 1 and *In re Esperanza C.* (2008) 165 Cal.App.4th 1042 because the parents in those cases, "were aggrieved by, and thus did have standing to appeal, pre-termination orders concerning their children's placement, because the possibility existed that reversing [the placement] orders might [have led] the juvenile court not to terminate parental rights." (*In re. K.C., supra*, 52 Cal.4th at pp. 237-238.) The *K.C.* Court summarized the applicable rule as follows: "A parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights." (*Id.* at p. 238.)

Here, like the father in *Cesar V.,* the Mother's reunification services have been terminated, but her parental rights remain intact. Consequently, she maintains an interest in the care, custody and companionship of the child, although in light of the termination of reunification services, those interests are no longer paramount. (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

Nonetheless having an interest in care and companionship, does not by itself confer standing. Mother must show that the order aggrieves those interests. Like the father in *Cesar V.,* she has not demonstrated how those interests are injured by the order removing the child from her placement with Grandmother. In the opening brief on appeal, Mother claimed that "Destiny's removal from the relative placement Mother desired and agreed to directly impacts Mother's interests, as any other placement in foster care impacts Mother's ability to visit Destiny and remain a viable part of her life post reunification services." But the court's order in no way affect's Mother's *legal right* to visit the child or remain a part of the child's life. It does not preclude her from presenting any evidence about the child's best interests or her relationship with Destiny.

Likewise Mother has not shown how reversing the order would assist her in avoiding a potential termination of her parental rights in the future. In her reply brief Mother states "[m]aintaining placement with the maternal grandmother advances Mother's interest in knowing her daughter is being cared for by her maternal side of the family, regardless whether she visits or has a present parental relationship with her daughter. At some later point, Mother may choose to rekindle her relationship with Destiny, and that is her right until parental rights are terminated. Removal from [Grandmother's] home changes the cards, and puts Destiny in a position where she could be adopted, thereby severing Mother's legal interests and rights toward her daughter permanently."

To be sure, "a placement decision . . . has the potential to alter the juvenile court's determination of the child's best interests and the appropriate permanency plan for that child, and thus may affect a parent's interest in his or her legal status with respect to the child;" (*In re H.G., supra,* 146 Cal.App.4th at p.) and based on that potential effect, in some cases the courts have found a parent has standing to challenge a placement order on appeal. (*Ibid.*; see also *In re Esperanza C., supra*, 165 Cal.App.4th at p. 1054.) This however, is not one such case. Here there is no evidence in the record before this court, nor has the Mother presented any convincing argument that the order at issue has any potential to alter the juvenile court's determination of the child's best interests and the

10

appropriate permanency plan. Mother has not participated in the dependency proceedings. She has not visited the child or made any efforts to be involved in her life or otherwise reunify with the child. She and the Grandmother have a strained relationship to the point where Mother indicated that she wanted no involvement with the Grandmother even if it meant not seeing the child. The implication in Mother's argument that the juvenile court might select guardianship over adoption as the permanent plan (thus preserving parental rights) if Destiny had not been removed from Grandmother's home, is based on pure speculation. Mother's claim that reversing the placement order may forestall adoption is not well taken. The child may be adopted, and Mother's parental rights may be severed whether or not the child remained placed with the Grandmother. Indeed, Grandmother took the position in the proceedings in the dependency court that the court should terminate parental rights of both parents and that she be allowed to adopt the child.

Under the unique circumstances of this case we cannot conclude that section 388 order has the potential to adversely affect Mother's interest in the care, companionship, and custody of the child. She has not shown that the order prejudices her visitation rights or her ability to prevent the possible termination of her parental rights. Her claim to the contrary is undermined by the fact that she has not been involved in the child's life at all. Here the only injury is to Mother's desire that the child remain with her mother and "interest in knowing her daughter is being cared for by her maternal side of the family." This is insufficient. As the *K.C.* Court observed "'the mere fact that a parent takes a position on a matter at issue in a juvenile dependency case that affects his or her child does not constitute a sufficient reason to establish standing to challenge an adverse ruling on it.'" (*In re K.C., supra,* 52 Cal.4th at p. 239, quoting *In re Carissa G.* (1999) 76 Cal.App.4th 731, 736.)

In our view, Mother has not shown that her interests are aggrieved by the removal of the child from Grandmother's home, and thus, she has no standing to challenge the order granting Father's section 388 petition.

## *DISPOSITION*

The appeal is dismissed.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**

**ZELON, J.**