Filed 1/7/16  In re D.D. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re D.D., a Person Coming Under the Juvenile Court Law. | B257191 |
| | (Los Angeles County Super. Ct. No. MJ21946) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | |
| D.D., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nancy S. Pogue, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Holly Jackson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

D.D., a minor, is subject to the dual jurisdiction of the juvenile dependency and delinquency courts (referred to herein, respectively, as the dependency court and the juvenile court). After he violated the terms of his probation, the juvenile court issued an order limiting the right of D.D.'s mother, G.Y. (mother) to make educational decisions for D.D. and designating the probation department as the holder of D.D.'s educational rights. Mother appeals from that order. As an initial matter, we conclude that mother has standing to appeal the order limiting her right to make educational decisions for her child. On the merits, we hold that the juvenile court did not abuse its discretion in limiting mother's rights and therefore affirm.

## FACTUAL AND PROCEDURAL SUMMARY

We relate only the facts and procedure relevant to mother's appeal of the court's April 29, 2014 order concerning D.D.'s educational rights.

The Los Angeles County Department of Children and Family Services (DCFS) filed a dependency petition regarding D.D. (then nine years old) on October 31, 2008. The dependency court sustained the petition, finding jurisdiction over D.D. was warranted pursuant to Welfare and Institutions Code[1] section 300, subdivisions (b) and (g) due to general neglect by D.D.'s mother and father.[2] The court sustained the allegations that mother left the children at home without adult supervision, the home was in a "filthy and unsanitary condition," and mother used marijuana. D.D. was allowed to return to his mother's custody in October 2010, but that order was terminated in January 2012 after DCFS filed a subsequent petition under section 342 alleging, among other things, that mother had "abducted" her children to Georgia. D.D. was ultimately placed

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] According to the DCFS and probation reports, D.D. did not have a relationship with his father, who had been incarcerated "most of [D.D.'s] life." Father is not a party to this appeal.

at Murrell's Farm and Boys Home, a group foster home, with monitored visits for mother.

D.D. came to the attention of the juvenile court when a petition was filed on January 7, 2013 alleging he had committed one count of second degree robbery (Penal Code § 211), one count of attempted second degree robbery (Penal Code § 211), and one count of misdemeanor petty theft (Penal Code §484, subd. (a)) on October 7, 2012. While the first juvenile petition was pending, a second petition was filed April 30, 2013, alleging that D.D. committed one count of battery upon a police officer (Penal Code § 243, subd. (b)) on March 15, 2013.

According to a multi-disciplinary team report filed in May 2013,[3] D.D. (then 13 years old) exhibited both academic and behavioral problems in school, resulting in multiple suspensions over the prior three years. D.D. was reported to be within the "borderline to the normal range of intellectual functioning," with "visual processing deficits." He had an "outdated" IEP[4] for special education services from 2011, but currently was not being provided with those services. DCFS discovered that mother "refused special education services," claiming that D.D. "does not want to be in special education."

On October 10, 2013, D.D. admitted one count of attempted second degree robbery (count 2 of the January 7, 2013 petition) and one count of battery (Penal Code § 242, the count as amended from the April 30, 2013 petition). The remaining charges were dismissed. The court declared D.D. a ward of the juvenile court pursuant to section

---

[3] Section 241.1 sets forth the protocol for the probation department and the local child welfare services department (here, DCFS) to work together in dual status cases, including joint assessment and recommendations regarding the child. (See § 241.1, subd. (e).)

[4] An individualized education plan (IEP) "is a comprehensive statement of a disabled child's educational needs and the specifically designed instruction and related services that will meet those needs. [Citation.] It is developed by a school official qualified in special education, the child's teacher, and the parents. [Citation.]" (*In re Carl R*. (2005) 128 Cal.App.4th 1051, 1067, fn. omitted.) "[A]n IEP is reviewed at least annually and revised as necessary." (*Ibid*., citing 20 U.S.C. § 1414(d)(4).)

602, and retained "dual status" jurisdiction with DCFS as the lead agency. D.D. remained placed at the group foster home, with a maximum term of confinement of three years, six months.

In November 2013, D.D. was absent without leave (AWOL) from his group home, thereby violating his probation. He was subsequently released to mother on January 6, 2014, pending the hearing on his probation violation.

The probation officer's report filed April 10, 2014 disclosed that D.D. had "shoplifted a few food items" from a supermarket on January 6, 2014, and had subsequently changed schools following a fighting incident during which he "choked a teacher's aide." D.D. was reported to be "defensive about answering questions about how he was doing in school" and "resistant to participating in special education and mental health counseling." Mother had previously told the multi-disciplinary team that because D.D. "did not believe he needed special education [] she did not believe he should have that service." D.D. was reportedly close to mother and his older brothers, but he had "no school motivation and no academic goals" and mother had "no control over his behavior." The DCFS education consultant recommended that D.D. be reassessed for special education services and that the holder of D.D.'s education rights make a written request to his school to reinstate those services. The consultant noted that "Mother, the current Holder of Education Rights, has denied special education to [D.D.] as well as current assessment," and that D.D. "continues to struggle academically and behaviorally in school. He has been expelled from two schools during the past year."

On April 10, 2014, the juvenile court removed D.D. from mother and detained him pending suitable placement. The court ordered the probation department to prepare a supplemental report pursuant to section 241.1, to ensure that dependency counsel for D.D. and mother "are contacted for their input in the preparation" of that report. The court further ordered the probation department to file a judicial review report and continued the hearing on D.D.'s probation violation to April 29, 2014.

The probation department filed its judicial review report on April 29, 2014. The probation officer recommended a change in the case plan (from placement with mother),

4

because mother "has not ensured that the minor attends school" and D.D. was "not receiving any services." D.D.'s compliance with the case plan was reported as "none," while mother's compliance was "moderate."

The probation department recommended that the court limit mother's right to make educational decisions. The probation department also filed the supplemental section 241.1 joint assessment report on April 29, 2014. The report included a statement made by mother to the probation officer on April 24, 2014 that if there were special education classes at the continuation school D.D. was attending, "I will sign him up." The same day, according to the report, the probation officer informed mother's attorney that D.D. and mother were "willing to participate in special education and the mother's educational rights are not being limited at this time." The report also contained the same details regarding mother's prior denial of consent for assessment and special education services. The report attached a statement prepared by D.D.'s dependency counsel.

At the hearing on April 29, 2014, D.D. admitted going AWOL in violation of his probation. The court retained dual jurisdiction, with probation as the lead agency. The court found D.D.'s compliance with the case plan had been "none," while mother's compliance had been "moderate." The court found a sufficient basis for D.D.'s removal from mother and admonished D.D. that he could "earn [his] way home" by compliance with the terms of his probation. The court further found that mother "signed [D.D.] out of special education," that D.D. "was not on track to graduate," and was not receiving "the services that he deserved." Based on these findings and the information set forth in the probation report, the court limited mother's rights to make educational decisions for D.D. and designated the probation officer as the holder of D.D.'s educational rights. Mother timely appealed the court's order limiting her right to make educational decisions for D.D.

## DISCUSSION

A. *Mother's Standing to Appeal*

As an initial matter, the Attorney General contends that mother lacks standing to appeal the issue of D.D.'s educational rights. We disagree.

5

"Generally, an aggrieved party may appeal a judgment in a juvenile dependency matter.  [Citation.]  To be aggrieved, a party must have a legally cognizable interest that is injuriously affected by the court's decision.  [Citation.]  We liberally construe the issue of standing and resolve doubts in favor of the right to appeal.  [Citation.]"  (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1053.)

"Until parental rights are terminated, a parent retains a fundamental interest in his or her child's companionship, custody, management and care.  [Citations.]"  (*In re Esperanza C.*, *supra*, 165 Cal.App.4th at p. 1053.)  In the dependency context, this confers standing on a parent to appeal a decision limiting the parent's right to make educational decisions for a child.  (See, e.g., *In re R.W.* (2009) 172 Cal.App.4th 1268, 1276-1277.)  Mother's fundamental interest, and therefore her standing as an aggrieved party, is the same in the context of a juvenile delinquency proceeding.  (See, e.g., *In re K.C.* (2011) 52 Cal.4th 231, 236 ["Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. [Citations.]"].)

Here, mother appeals the juvenile court's order that "took away my education rights/limited my education rights as to [D.D.] without due process."[5]  Because mother's right to make educational decisions for D.D. was affected by the juvenile court's order in an "immediate and substantial way," she has standing to appeal that order.

The Attorney General suggests that "mother's rights are at best remotely affected" by the order limiting her educational rights.  We reject this argument, as it lacks any citation in support and is contrary to the authority discussed herein detailing a parent's constitutionally-protected right to make educational decisions for his or her child.

---

[5] We note that, curiously, both parties refer to D.D. as the appellant and argue over whether he consented to mother's appeal on his behalf.  However, the notice of appeal was filed by mother's attorney, signed by mother as appellant, and stated quite clearly that the appeal was taken by mother from the court's order limiting *her* rights to direct D.D.'s education.  We therefore focus on mother's own standing to appeal this issue.

B. *Sufficiency of Evidence Supporting Limitation of Education Rights*

Mother argues the juvenile court erred in limiting her right to make educational decisions for D.D. We review an order by the juvenile court limiting a parent's educational rights "under an abuse of discretion standard [citation], bearing in mind '[t]he focus of dependency proceedings is on the child, not the parent' [citation]." (*In re R.W.*, *supra*, 172 Cal.App.4th at p. 1277.)

Although parents have a "constitutionally protected liberty interest in directing their children's education," when a child comes under the jurisdiction of the dependency and/or juvenile courts, the court may limit the parent's "ability to make educational decisions on the child's behalf by appointing a responsible adult" to make those decisions. (*In re R.W.*, *supra*, 172 Cal.App.4th at p. 1276 [citations omitted]; see also §§ 245.5, 361, subd. (a).) A court may impose any such limitation it deems "necessary and proper for the best interests of or for the rehabilitation of the minor." (§ 245.5; see also § 361, subd. (a) [limitations "may not exceed those necessary to protect the child"]; § 726, subd. (b)(5) ["educational and school placement decisions shall be based on the best interests of the child"].)

Mother relies on two pieces of evidence to argue that the court lacked a sufficient basis to find that limiting her rights to direct D.D.'s education was in D.D.'s best interest: first, her recent promise to enroll D.D. in special education services and D.D.'s agreement to participate in those services, and second, the statement by the probation officer to mother's attorney, as reflected in the probation report, that "mother's educational rights are not being limited at this time." Mother ignores, however, the lengthy record of poor academic performance by D.D., including the juvenile court's findings that D.D. had been expelled from his prior school, was failing the majority of his classes, and was "not on track to graduate." Further, the record reflects that D.D. and mother had only recently agreed to cooperate with providing special education assessment and services to D.D. Prior to April 24, 2014 (five days before the hearing), all of the evidence reflects their longstanding resistance to, and failure to ensure D.D.'s use of, those services. As such, the court's finding that under mother's care, D.D. was

7

not receiving the services he needed was supported by substantial evidence and was not undermined by the very recent evidence of improvement by D.D. and of cooperation by mother.

Mother also seems to suggest that probation officer's statement that her rights "are not being limited at this time" was a recommendation to juvenile court, which the court should have followed because there was no "intervening or new information" suggesting mother's noncompliance between April 24, 2014, when that statement was made, and the hearing on April 29. Even if that statement to mother's attorney could be construed as a recommendation by the probation officer, the court was required to consider the record as a whole, including the entire probation report, and then had discretion to accept or reject any recommendations therein. (See, e.g., *People v. Warner* (1978) 20 Cal.3d 678, 683 [court must consider, but may "reject in toto the report and recommendation of the probation officer"].) Notably, the same probation report that contained the probation officer's statement to mother's attorney also detailed the serious, longstanding problems with D.D.'s education. Moreover, the court was also entitled to review and rely on the probation department's judicial review report, in which it recommended that the court limit mother's right to make educational decisions, as she had "not ensured that the minor attends school" and D.D. was "not receiving any services." Mother cites no authority suggesting the court was somehow bound by the statement made by the probation officer to her attorney, nor does she claim she lacked notice that her rights might be limited.

Finally, mother complains that the court "did not elicit or consider any information" from her or her counsel at the hearing. To the contrary, the court specifically directed the probation department to submit a supplemental report in advance of the April 29 hearing and ordered that such report include the input of mother and her counsel, which the probation department did. Mother does not suggest she had any further information that should have been included or considered by the court, nor did she or her counsel raise any objection or request to be heard on that point during the hearing. As such, we find no error.

8

**DISPOSITION**

Affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

WILLHITE, Acting P. J.

MANELLA, J.