Filed 2/27/25  Shin v. Nissin Foods CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SUE SHIN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>NISSIN FOODS (U.S.A.) CO., INC.,<br><br>    Defendant and Appellant. | B333063<br><br>(Los Angeles County Super. Ct. No. 22STCV26729) |

APPEALS from a judgment of the Superior Court of Los Angeles County, Thomas D. Long, Judge.  Affirmed in part, dismissed in part.

Law Office of Juan Hong and Juan Hong for Plaintiff and Appellant.

Hahn Loeser & Parks, Michael J. Gleason and Lindsay J. Mertens, for Defendant and Appellant.

## I.    INTRODUCTION

Plaintiff Sue Shin appeals from a judgment following an order granting defendant Nissin Foods (U.S.A.) Co., Inc.'s motion for judgment on the pleadings.  We affirm.[1]

## II.    BACKGROUND

A.    *Facts*

Defendant produces packaged noodle products that are distributed under the brand names Top Ramen, Cup Noodles, and Chow Mein.  Between August 2018 and December 2019, plaintiff purchased three such products:  Top Ramen Beef Flavor, Cup Noodles Soup Chicken Flavor, and Cup Noodle Seafood.  Each of these three products included a label that stated "NO ADDED MSG*" within a blue circle.  Immediately below, or next to, that statement was another label, in a smaller font size: "*CONTAINS SMALL AMOUNTS OF NATURALLY

---

[1]    Defendant cross-appealed, asserting the trial court erred by finding that plaintiff had standing to bring her claims.  In light of the disposition we reach in this case, defendant has failed to demonstrate how, as the prevailing party below and on appeal, it is an aggrieved party for purposes of standing to appeal.  (Code Civ. Proc., § 902; *In re K.C.* (2011) 52 Cal.4th 231, 236 ["An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision"].)  Accordingly, we dismiss defendant's cross-appeal.

2

OCCURRING GLUTAMATES."[2]  The ingredients in defendant's products include autolyzed yeast extract, hydrolyzed corn protein, and hydrolyzed soy protein (collectively, protein hydrolysates).[3]

B.    *Complaint*

On August 17, 2022, plaintiff filed a complaint against defendant, alleging that defendant engaged in false advertising by stating that the products had "NO ADDED MSG" even though the products contained ingredients "that contain MSG or create MSG during processing."  Plaintiff alleged that the Cup Noodles Chicken Flavor ingredients label expressly included "monosodium glutamate."  Plaintiff purchased the products based on the deceptive labels.  Plaintiff also alleged that the products were misbranded and that defendant thereby violated the federal Food, Drug, and Cosmetic Act (21 U.S.C. §§ 301 et seq.; 343 et seq.) and U.S. Food and Drug Administration (FDA) regulation 21 Code of Federal Regulations part 101.22(h)(5).

Plaintiff's complaint alleged causes of action for violation of the Unfair Competition Law under both the unlawful and unfair prongs (UCL; Bus. & Prof. Code, § 17200 et seq.), the false advertising law (Bus. & Prof. Code, § 17500 et seq.), and the Consumer Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.).

---

[2]    In her complaint, plaintiff omitted the asterisk from her quotation of the statement in defendant's label as well as the disclaimer associated with the asterisk.  Defendant made a request for judicial notice of the product labels, which request plaintiff did not oppose.  The trial court granted the request.

[3]    See 21 C.F.R. §§ 101.22(h)(7), 102.22.

Plaintiff sought as relief an injunction requiring defendant to cease its false advertising and to engage in a corrective notice campaign. Plaintiff also requested costs and attorney fees.

C.    *Stay*

On November 8, 2022, the trial court granted defendant's motion to stay the proceedings, pending resolution of a putative nationwide class action filed in the Eastern District of New York against defendant, which alleged substantially similar allegations to the complaint here. (See *Henry v. Nissin Foods (U.S.A.) Co. Inc.* (E.D.N.Y. Mar. 17, 2023, 22-CV-363 (NGG) (RER)) 2023 WL 2562214 (*Henry*).)[4] On June 1, 2023, the trial court lifted the stay.

D.    *Motion for Judgment on the Pleadings*

On June 5, 2023, defendant moved for judgment on the pleadings. Defendant argued that no reasonable consumer would have been misled by the product labels and plaintiff therefore could not establish a violation of the UCL, the false advertising law, or the CLRA. Defendant also argued that its labels did not violate state or federal law.

In support of its motion, defendant made a request for judicial notice of the labels of the challenged products as of

---

[4]    The district court granted defendant's motion to dismiss for failure to state a claim, finding among other things that the disclaimer on the products would not mislead a reasonable consumer to believe that the products did not contain free glutamates. (*Henry, supra*, 2023 WL 2562214, *8.)

4

May 30, 2023. None of the listed ingredients for the products included monosodium glutamate.

Plaintiff filed an opposition to the motion but did not oppose defendant's request for judicial notice. She did not dispute that the labels defendant submitted were accurate depictions of the challenged labels but maintained that she "did not notice the asterisk at the end of NO ADDED MSG" and did not read the associated disclaimer.[5] Plaintiff did not directly dispute that the products (aside from the Cup Noodles Chicken Flavor) did not include monosodium glutamate as an ingredient but maintained that the products "contain MSG." Because plaintiff was unaware that ingredients such as autolyzed yeast extract, hydrolyzed corn protein, and hydrolyzed soy protein contained free glutamate that was "essentially equivalent to MSG," she "could not relate the disclaimer with the term of 'NO ADDED MSG.'" (Emphasis omitted.)

Plaintiff also argued that the product labels failed to comply with FDA regulations, citing in support a "Question and Answer" published on the FDA's website on November 19, 2012 (2012 Q&A). Finally, plaintiff noted in her opposition that paragraph 22 of her complaint alleged that the ingredients of Cup Noodles Soup Chicken Flavor included "'Monosodium Glutamate.'" She then requested judicial notice of, among other

---

[5] Because we consider how a reasonable consumer would have interpreted the labels, whether plaintiff read the label is not relevant to our inquiry. "This focus on the 'reasonable consumer'—rather than *any particular consumer*—means that an ad or practice may be 'fraudulent' even without any "'individualized proof of deception, reliance and injury." [Citation.]' [Citations.]" (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1135–1136 (*Shaeffer*).)

things, the ingredients for defendant's Cup Noodles Chicken Flavor as listed by Amazon.com on its website on June 1, 2023, which included monosodium glutamate. Defendant opposed plaintiff's request for judicial notice, arguing that the Amazon.com summary of the listed ingredients was not a true and accurate copy of the product label.

E.    O*rder*

On August 24, 2023, the trial court conducted a hearing on defendant's motion. That same date, the court issued its order on the motions and judicial notice requests. The court granted defendant's request for judicial notice of the product labels. The court ruled that "[t]hese are the labels that the [p]laintiff alleges are misleading, and they form the basis for the allegations in the [c]omplaint. . . . The [p]laintiff has not opposed the requests and does not dispute their accuracy." The court denied plaintiff's request for judicial notice of the Amazon.com listing of the Cup Noodles Chicken Flavor ingredients, concluding that listing was not a proper subject for judicial notice.

The trial court applied the reasonable consumer test, applicable to the UCL, false advertising law, and CLRA causes of action, and determined that no reasonable consumer would be misled by the product labels. The court also concluded that the labels complied with FDA regulations. Finally, the court declined to defer to the FDA's 2012 Q&A, finding that the applicable FDA regulations were not ambiguous.

On September 14, 2023, the trial court entered judgment. Plaintiff timely appealed and defendant timely cross-appealed.

6

## III.   DISCUSSION

### A.   *Judicial Notice of Labels*

Plaintiff argues the trial court erred by relying on the judicially noticed product labels to contradict plaintiff's pleading in the complaint that the Cup Noodles Chicken Flavor contained monosodium glutamate as an ingredient.  Plaintiff does not challenge the accuracy of the judicially noticed product labels.  She nonetheless argues that because the product labels were current as of May 30, 2023, they cannot be used to contradict her allegations, since she purchased the challenged products between August 2018 to December 2019.  We reject this contention.

In the trial court, plaintiff did not object to defendant's request for judicial notice, challenge the accuracy of the labels submitted by defendant, or contend that the labels upon which plaintiff's complaint was based differed from those in defendant's request.  Further, the premise of plaintiff's complaint was that defendant's products currently contained false labels such that an injunction was appropriate.  "'[F]ailure to timely object to the propriety of judicial notice . . . is deemed a waiver of that objection.'"  (*Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 512, fn. 4.)  Plaintiff therefore forfeited her argument on appeal.[6]

---

[6]    On appeal, defendant requests judicial notice of the labels for its products in circulation between August 2018 and December 2019, which do not materially differ from the labels submitted by defendant and judicially noticed by the trial court.  Having concluded that plaintiff forfeited her challenge on appeal

The judicially noticed product labels contradicted plaintiff's allegation that Cup Noodles Chicken Flavor contained monosodium glutamate as a listed ingredient.  And, "allegations in the pleading may be disregarded if they are contrary to facts judicially noticed.  [Citations.]" (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751–752.)  Accordingly, we disregard plaintiff's allegation in her complaint that Cup Noodles Chicken Flavor contained monosodium glutamate as a listed ingredient.  We likewise reject all of plaintiff's arguments that are premised on this allegation.

B.  *Motion for Judgment on the Pleadings*

1.  <u>Legal Standard</u>

"""The standard of review for a motion for judgment on the pleadings is the same as that for a general demurrer:  We treat the pleadings as admitting all of the material facts properly pleaded, but not any contentions, deductions or conclusions of fact or law contained therein . . . .  We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any theory.'" [Citation.]" (*Tarin v. Lind* (2020) 47 Cal.App.5th 395, 403–404.)  "As when ruling on a demurrer, the court is required to consider only allegations contained within the complaint, which are presumed to be true, or facts of which it may take judicial notice.  [Citations.]" (*Tung v. Chicago Title Co.* (2021) 63 Cal.App.5th 734, 758–759.)

---

to the time period when the judicially noticed labels were in circulation, we decline to grant defendant's request.

8

2.    UCL

"California's unfair competition law bars 'unfair competition' and defines the term as a 'business act or practice' that is (1) 'fraudulent,' (2) 'unlawful,' or (3) 'unfair.' [Citations.] Each is its own independent ground for liability under the unfair competition law [citation], but their unifying and underlying purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services' [citation]." (*Shaeffer, supra*, 44 Cal.App.5th at p. 1135.)

"To prevail on a claim under the fraudulent prong of the unfair competition law 'based on false advertising or promotional practices,' the plaintiff must "'show that 'members of the public are likely to be deceived.'"' [Citations.] An advertisement or promotional practice is likely to deceive if it includes assertions that are (1) untrue, or (2) "'true[, but are] either actually misleading or which [have the] capacity, likelihood or tendency to deceive or confuse the public." [Citation.]' [Citations.] By focusing on whether 'members of the public' are likely to be deceived, the unfair competition law views the challenged ad or promotional practice through the eyes of the 'reasonable consumer'—that is, the 'ordinary consumer acting reasonably under the circumstances'—unless the advertisement or practice is 'aimed at a particularly susceptible audience.' [Citations.]" (*Shaeffer, supra*, 44 Cal.App.5th at p. 1135.)

"To prevail on a claim under the unlawful prong of the unfair competition law, the plaintiff must show that a challenged advertisement or practice violates any federal or California 'statute or regulation.' [Citations.]" (*Shaeffer, supra*, 44 Cal.App.5th at p. 1136.)

9

### 3. False Advertising Law

"California's false advertising law bars 'any advertising device . . . which is untrue or misleading.' [Citation.] Because this law and the fraudulent prong of the unfair competition law substantively overlap [citations], the plaintiff's burden under these provisions is the same: To prevail on a claim under the false advertising law, she must show that ""members of the public are likely to be deceived"' [citation]' [citation] and must do so as adjudged through the eyes of 'the reasonable consumer' [citation]." (*Shaeffer, supra*, 44 Cal.App.5th at p. 1136.)

### 4. CLRA

"The CLRA defines 27 'unfair methods of competition and unfair or deceptive acts or practices.' (Civ. Code, § 1770.)" (*Shaeffer, supra*, 44 Cal.App.5th at p. 1136.) Plaintiff alleged that defendant violated the provisions of the CLRA that prohibit: "[r]epresent[ing] that [goods] . . . have characteristics, benefits or uses which they do not have" (Civ. Code, § 1770, subd. (a)(5)); "[r]epresent[ing that goods] are of a particular standard, quality, and/or grade when they are of another" (*id.*, subd. (a)(7)); "advertis[ing goods] with the intent not to sell them as advertised" (*id.*, subd. (a)(9)); and "represent[ing] that 'the subject of a transaction has been supplied in accordance with a previous representation when it has not'" (*id.*, subd. (a)(16)).

"The CLRA also views representations through the eyes of 'the reasonable consumer.' [Citations.] An actionable 'representation' may be (1) an affirmative representation, or (2) an omission 'if the omitted fact is ([a]) "contrary to a

10

[material] representation actually made by the defendant" or ([b]) is "a fact the defendant was obliged to disclose.'" [Citations.]" (*Shaeffer, supra*, 44 Cal.App.5th at p. 1136.)

### 5. "Reasonable Consumer" Analysis

Plaintiff's contentions on appeal as to why the challenged labels are misleading are not entirely clear. Although she asserts that the statement "NO ADDED MSG" is misleading, she does not articulate what a reasonable consumer would interpret "MSG" to mean. Indeed, in her opening brief, she states that some "reasonable consumers . . . do not relate MSG with mono sodium glutamate [sic]" and argues that plaintiff, "a reasonable consumer, did not equate 'MSG' with '[m]onosodium [g]lutamate.'" She then argues that "[p]laintiff . . . did not know that free glutamate is essentially equivalent to MSG," again, without specifying what a reasonable consumer would understand "MSG" to mean. We will assume that a reasonable consumer would associate "MSG" with "monosodium glutamate". (See 21 C.F.R. § 101.22(h)(5).) As plaintiff concedes, the disclaimer ""*CONTAINS SMALL AMOUNTS OF NATURALLY OCCURRING GLUTAMATES'" was true. She argues that the "NO ADDED MSG*" label was nonetheless misleading because a reasonable consumer would not associate glutamates with "MSG." Plaintiff cites in support 61 Federal Register 48102-02 (Sept. 12, 1996), entitled "Food Labeling; Declaration of Free Glutamate in Food," which stated: "Because the average consumer is not aware that ingredients like hydrolyzed soy protein, autolyzed yeast extract, tomato paste, and parmesan cheese contain free glutamate or that free glutamate is

11

essentially equivalent to MSG, declaration of these ingredients by their common or usual names does not indicate to the consumer that an MSG-like substance is present in the food." Plaintiff's citation to the Federal Register is to a notice of proposed rulemaking. (See *ibid.* [described as "[a]dvance notice of proposed rulemaking" by the FDA].) The 1996 proposal was never enacted and was withdrawn in 2003. (See 68 Fed.Reg. 19766-01 (Apr. 22, 2003) [entitled "Withdrawal of Certain Proposed Rules and Other Proposed Actions; Notice of Intent"].) Thus, plaintiff cannot rely on this proposal to establish a violation of an enforceable FDA regulation.

Moreover, plaintiff's argument that a reasonable consumer would not understand that the disclaimer's reference to "glutamates" was to an ingredient that was "essentially equivalent to [monosodium glutamate]" does not render the labels misleading. Consumers who sought to avoid added monosodium glutamate would not have been misled because the products do not include monosodium glutamate as an ingredient. (See *Henry, supra*, 2023 WL 2562214, *21 ["any consumer who is unaware that MSG and free glutamates refer to the same thing, as alleged, could not be misled in the first place, as Plaintiff fails to allege that the Products contain MSG specifically"].) And, consumers who did not understand that glutamates were "essentially equivalent" to monosodium glutamate would not have been misled because they would have been advised that the products included naturally occurring glutamates and that there was a relationship between monosodium glutamate and glutamates given the similarity of the names, the use of the asterisk, and the disclaimer.

12

### 6. Ingredients That Naturally Contain MSG

Plaintiff additionally argues that the "NO ADDED MSG" label is misleading and misbranded because "MSG," which, again, we interpret to mean monosodium glutamate, naturally occurs in the protein hydrolysates listed in the challenged products' ingredients. According to plaintiff, parts 101.22(h)(5) and 101.22(h)(7) of title 21 Code of Federal Regulations are ambiguous and thus subject to the FDA's interpretation in the 2012 Q&A. The question posed was "How can I know if there is MSG in my food?" The answer stated: "FDA requires that foods containing added MSG list it in the ingredient panel on the packaging as monosodium glutamate. However, MSG occurs naturally in ingredients such as hydrolyzed vegetable protein, autolyzed yeast, hydrolyzed yeast, yeast extract, soy extracts, and protein isolate, as well as in tomatoes and cheeses. While FDA requires that these products be listed on the ingredient panel, the agency does not require the label to also specify that they naturally contain MSG. However, foods with any ingredient that naturally contains MSG cannot claim 'No MSG' or 'No added MSG' on their packaging." (FDA, *Questions and Answers on Monosodium glutamate (MSG)* (Nov. 19, 2012) <https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-msg> [as of Feb. 26, 2025], archived at <https://perma.cc/7FCN-B6RW>.)

Generally, interpretation of administrative regulations is subject to de novo review. (*Butts v. Board of Trustees of California State University* (2014) 225 Cal.App.4th 825, 833; see *Hoitt v. Department of Rehabilitation* (2012) 207 Cal.App.4th 513, 523 [applying rules of statutory construction to regulations

promulgated by administrative agencies].) When a court defers to a federal agency's reasonable interpretation of genuinely ambiguous regulations, we refer to that deference as *Auer* deference. (See *Kisor v. Wilkie* (2019) 588 U.S. 558, 563 (*Kisor*), citing *Auer v. Robbins* (1997) 519 U.S. 452 (*Auer*).)[7] As the United States Supreme Court explained, "a court should not afford *Auer* deference unless the regulation is genuinely ambiguous. [Citations.] If uncertainty does not exist, there is no plausible reason for deference. The regulation then just means what it means—and the court must give it effect, as the court would any law. . . . But if the law gives an answer—if there is only one reasonable construction of a regulation—then a court has no business deferring to any other reading, no matter how much the agency insists it would make more sense. Deference in that circumstance would 'permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation.' [Citation.]" (*Kisor, supra*, 588 U.S. at pp. 574–575.) "And before concluding that a rule is genuinely ambiguous, a court must exhaust all the 'traditional tools' of construction. [Citation.]" (*Id.* at p. 575.)

As relevant here, title 21 Code of Federal Regulations part 101.22(h) provides: "The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way: [¶] . . . [¶] (5) Any monosodium glutamate used

_____

[7] Although *Loper Bright Enterprises v. Raimondo* (2024) 603 U.S. 369 "did not expressly overrule *Auer* and *Kisor*, its reasoning is arguably irreconcilable with *Auer* deference." (*Humboldt Alliance for Responsible Planning v. California Coastal Com.* (2024) 107 Cal.App.5th 704, 716.) Because we conclude below that the relevant regulations are not ambiguous, we need not discuss whether the doctrine of *Auer* deference still applies.

as an ingredient in food shall be declared by its common or usual name 'monosodium glutamate.' [¶] . . . [¶] (7) Because protein hydrolysates function in foods as both flavorings and flavor enhancers, no protein hydrolysate used in food for its effects on flavor may be declared simply as 'flavor,' 'natural flavor,' or 'flavoring.' The ingredient shall be declared by its specific common or usual name as provided in § 102.22 of this chapter."[8]

Although plaintiff concedes that these regulations, when read separately from each other, are unambiguous, she argues the regulations are ambiguous when construed together, citing as persuasive authority *Campen v. Frito-Lay North America, Inc.* (N.D.Cal. Apr. 1, 2013) 2013 WL 1320468. There, the federal district court found: "In this case, the regulations have at least two possible interpretations. The regulations might suggest that since the FDA requires each type of ingredient to be listed with its proper name, a 'No MSG' statement would not be misleading under the regulations because 'MSG' means only 'MSG' as an individually named ingredient. Alternatively, the regulations might be interpreted to forbid such a statement because they clearly acknowledge that MSG is just one type of free glutamate, meaning that 'No MSG' would be misleading if the product contained another type of free glutamate other than MSG despite properly providing that ingredient's name." (*Id.* at \*28.) We disagree.

---

[8] "The common or usual name of a protein hydrolysate shall be specific to the ingredient and shall include the identity of the food source from which the protein was derived. [¶] (a) 'Hydrolyzed wheat gluten,' 'hydrolyzed soy protein,' and 'autolyzed yeast extract' are examples of acceptable names." (21 C.F.R. § 102.22.)

15

The FDA's regulations do not "clearly acknowledge that MSG is just one type of free glutamate." To the contrary, title 21 Code of Federal Regulations part 101.22 does not discuss any glutamate other than monosodium glutamate. We conclude the regulations at issue are unambiguous. If monosodium glutamate is "used as an ingredient," the product's ingredients label must so state. (21 C.F.R. § 101.22(h)(5).) If the product contains protein hydrolysate as an ingredient, the product must declare the protein hydrolysate "by its specific common or usual name." (*Id.*, § 101.22(h)(7).) Because there is no ambiguity, the label "NO ADDED MSG*" on the challenged products does not violate title 21 Code of Federal Regulations part 101.22(h)(5) and (7). We therefore need not apply *Auer* deference to the FDA's 2012 Q&A.

7.    Unlawfulness

"To prevail on a claim under the unlawful prong of the unfair competition law, the plaintiff must show that a challenged advertisement or practice violates any federal or California 'statute or regulation.'" (*Shaeffer, supra*, 44 Cal.App.5th at p. 1136.) Plaintiff argues that the labels do not comply with title 21 Code of Federal Regulations part 101.22(h)(5) and (7). As discussed, we find no violation of the relevant FDA regulations. Accordingly, plaintiff has failed to allege facts demonstrating that the "NO ADDED MSG*" label is unlawful.

The trial court did not err by granting defendant's motion for judgment on the pleadings.[9]

---

[9]    Plaintiff also argues that if the judgment is reversed, the case should be assigned to a different judge. Because we affirm the judgment, we need not address this argument.

## IV.  DISPOSITION

Defendant's cross-appeal is dismissed.  The judgment is affirmed.  Defendant is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM (D.), J.


We concur:


HOFFSTADT, P. J.


BAKER, J.


17