Filed 1/2/14; pub. order 1/17/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. L.N., Defendant and Appellant. | G048720 (Super. Ct. No. DP020229) O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Jacki C. Brown, Judge. Appeal dismissed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, and Karen L. Christensen, Deputy County Counsel, for Plaintiff and Respondent.

\*        \*        \*

J.C. was a dependent of the court until she turned 18, at which point, upon her request, the court terminated dependency jurisdiction. The mother, whose parental rights were not terminated, but who was not receiving reunification services, appeals, contending the court failed to determine whether terminating jurisdiction was in the best interest of J.C. We dismiss the appeal for lack of standing.

FACTS

In October of 2010 the juvenile court sustained a petition declaring then minor J.C. a dependent of the court. The court found that J.C. was not attending school, suffered a hospitalization due to serious mental illness, and that she was receiving inadequate medical care. Mother, who is blind, divorced father when J.C. was 4 years old. J.C. had been living with father ever since. The court initially permitted J.C. to continue living with father. But in July of 2011, after father continued to neglect J.C.'s schooling and proper psychiatric care, and after another psychiatric hospitalization, the court took custody of J.C away from the parents in favor of the Social Services Agency and placed her at Orangewood Children and Family Center (Orangewood). The court ordered reunification services.

J.C.'s psychiatric condition slowly improved at Orangewood and she was eventually placed with foster parents. Shortly thereafter, the court terminated reunification services, but not parental rights. Although J.C. had two psychiatric setbacks that required hospitalization after moving in with the foster parents, J.C.'s condition continued to improve, particularly after doctors found an improved medication regimen.

2

J.C. turned 18 years old in July of 2013. J.C. was fully informed of her right to continue in the juvenile dependency program as a nonminor dependent through the age of 21. She was also informed that, should she choose to terminate jurisdiction at age 18, she had the right to petition the court to resume jurisdiction prior to turning 21. Although J.C. had previously vacillated concerning whether to remain in the dependency program as a nonminor dependent, at a post permanency review hearing on her 18th birthday, J.C. requested that the court terminate jurisdiction so she could return to living with her father. The court asked J.C. to think over her decision for one week. A week later, she was determined that the court terminate jurisdiction. Based on that request, the court terminated dependency jurisdiction. Mother appealed, claiming the trial court failed to make a finding that termination of jurisdiction was in the best interests of J.C.

DISCUSSION

We dismiss mother's appeal because she lacks standing. "Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. [Citations.] An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision. [Citations.] These rules apply with full force to appeals from dependency proceedings." (*In re K.C.* (2011) 52 Cal.4th 231, 236.)

To determine whether a parent has standing, "we must therefore precisely identify [mother's] interest in the matter." (*In re K.C.*, *supra*, 52 Cal.4th at p. 236.) Mother asserts she has standing because the termination of jurisdiction resulted in J.C. living with father, and mother worries father will neglect J.C.'s psychiatric treatment, which will damage mother's relationship with J.C. That interest, while perfectly understandable on an emotional level, does not confer legal standing.

3

"'All parents, unless and until their parental rights are terminated, have an interest in their children's 'companionship, care, custody and management . . . .' [Citation.]  This interest is a 'compelling one, ranked among the most basic of civil rights.'"  "To this end, the law requires the juvenile court to provide reunification services unless a statutory exception applies.  [Citations.]  In contrast, after reunification services are terminated . . . (as in this case), 'the parents' interest in the care, custody and companionship of the child [is] no longer paramount.  Rather, at this point "the focus shifts to the needs of the child for permanency and stability . . . ."'"  (*In re K.C., supra*, 52 Cal.4th at p. 236.)  Here, reunification services were terminated, and thus mother's *legal* interest in companionship is significantly reduced.

Her legal interest in companionship was eliminated entirely, at least for purposes of this dependency proceeding, when minor turned 18.[1]  "While minors do not have the same freedoms as adults, and are specially protected by the law, these legal disabilities and privileges are removed when a person turns 18.  Although maturity is not achieved overnight, when one reaches majority the law treats the young adult as a responsible person entitled to make independent decisions in conducting his or her affairs." (*In re Holly H.* (2002) 104 Cal.App.4th 1324, 1336.)  "Now that she has reached the age of majority and has acquired the rights and responsibilities that come with adulthood, the court may not, and should not, force her to accept its services." (*Id.* at p. 1337.)

A pertinent example of the elimination of mother's legal interest is that she was not even entitled to notice of the hearing from which she appeals.  Once a minor has turned 18, the parents are no longer entitled to notice of any hearing to terminate jurisdiction, unless the parents are receiving reunification services (which mother was

_____

[1]     Mother may well have legal rights in other proceedings in the future, such as probate proceedings, issues arising in a wrongful death suit, or conservatorship proceedings, to name a few.

4

not). (Welf. & Inst. Code, § 295, subd. (b) ["No notice shall be required for a parent . . . of a nonminor dependent, . . . unless the parent is receiving court-ordered family reunification services pursuant to Section 361.6"].)[2]

As another example, a parent not receiving reunification services is not entitled to notice of hearings concerning adoption of the nonminor dependent. (§§ 295, subd. (b), 366.3, subd. (a).) Similarly, section 388, subdivision (e)(1), authorizes a nonminor whose dependency jurisdiction was dismissed to petition for resumption of that jurisdiction, and provides that the county welfare services, probation department, or tribal placing agency may file such a petition on behalf of the nonminor, but not the parents. The parents are not even entitled to notice of such a hearing. (*Id*., subd. (e)(2)(B).)

In view of these principles, we conclude a mother who is not receiving reunification services does not have standing to appeal the court's dismissal of dependency jurisdiction over an adult child simply based on her interest in the companionship of her adult child.

Mother argues, "Even when parent-child reunification is no longer a goal of the dependency proceedings, as was the case here, parents nevertheless retain a fundamental interest in their child's companionship, custody, management, and care," citing *In re H.G.* (2006) 146 Cal.App.4th 1. *In re H.G.* does not stand for the proposition that a parent's interest in the custody and care of a nonminor child confers standing to appeal the termination of jurisdiction over the nonminor. Indeed, our high court recently narrowly construed the holding in *In re H.G.* as follows: "*In re H.G.*, *supra*, 146 Cal.App.4th 1, was an appeal by parents of an order removing their daughter from her grandparents' custody [citation] and a judgment terminating parental rights. The Court of Appeal reversed the order taking the child from her grandparents because the juvenile court had failed to comply with section 361.3, which mandates preferential consideration

---

[2] All statutory references are to the Welfare & Institutions Code.

of a request for placement with relatives of the dependent child. [Citations.] Because the court failed properly to consider the request for placement with relatives, the order terminating parental rights was at least premature and possibly erroneous: The placement of a dependent child with relatives can, under certain circumstances, make the termination of parental rights unnecessary. [Citation.] Because the propriety of terminating parental rights depended partly on the placement decision, the order removing the child from her grandparents' custody affected the mother's interests sufficiently to confer upon her standing to appeal that order as well. As the Court of Appeal explained, 'a placement decision under section 387 has the potential to alter the court's determination of the child's best interests and the appropriate permanency plan for that child, and thus may affect a parent's interest in his or her legal status with respect to the child.'" (*In re K.C., supra*, 52 Cal.4th 231 at pp. 237-238, fns. omitted.) Our high court gleaned the following rule from *In re H.G.*, *supra*, 146 Cal.App.4th 1: "A parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights." (*In re K.C.*, at p. 238.)

*In re H.G.* thus does not stand for the broad proposition that a parent not receiving reunification services has standing to appeal any order that may affect the welfare of a child. *In re H.G.* is further distinguishable in that, there, the case concerned a minor. (*In re H.G., supra*, 146 Cal.App.4th at p. 4.) Here, J.C. is an adult.

DISPOSITION

The appeal is dismissed.


                              IKOLA, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, | G048720 |
| Plaintiff and Respondent, | (Super. Ct. No. DP020229) |
| v. | O R D E R |
| L.N., | |
| Defendant and Appellant. | |

Respondent requested that our opinion, filed on January 2, 2014, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


IKOLA, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

8