Filed 2/17/26  In re S.O. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re S.O., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B347844 (Super. Ct. No. 24JD00026-001) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES, Petitioner and Respondent, v. M.F., Objector and Appellant. | |

M.F. (father) appeals from the juvenile court's findings and orders terminating jurisdiction over his daughter, S.O., pursuant

to Welfare and Institutions Code section 364,[1] granting sole legal and physical custody to mother, and denying father all contact and visitation with S.O.  Father contends the juvenile court erred in denying his request for an evidentiary hearing.  He also contends the juvenile court abused its discretion by modifying visitation in its exit order without a detriment finding, requiring reversal.  In a letter brief, the San Luis Obispo County Department of Social Services agrees with father that reversal is required.  We accept the department's concession and will reverse and remand.

*Factual and Procedural Background[2]*

In February 2024, the San Luis Obispo Department of Social Services secured a protective custody warrant and detained S.O. after mother and S.O. tested positive for methamphetamine and amphetamine at S.O.'s birth.  The department filed a dependency petition alleging, among other things, S.O.'s positive drug test, mother's refusal to stop breastfeeding S.O. even after being informed of the risks given her positive drug test, mother's admission to using substances throughout her pregnancy, and mother's prior child welfare

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2]  We granted father's request to take judicial notice of our prior opinion in *In re S.O.* (May 15, 2025, B340698) [nonpub. opn.]), from which we summarize this factual and procedural background.

In his opening brief, father also seeks to augment the record from his prior appeal in case number B344842.  Pursuant to local rule 9, we grant father's request and augment the record accordingly.  (Ct. App., Second Dist., Local Rules of Ct., rule 9.)

history.  The department also alleged S.O. was without provision for support because father was unknown.

At the time of S.O.'s birth, father was incarcerated.  He sent four letters to the department claiming to be the biological father of S.O., requesting a DNA test to establish his paternity, and asserting his desire to have custody of S.O.

After DNA test results established that father was S.O.'s biological father, the department filed an amended petition and included new allegations related to father, including that he had been incarcerated for the duration of the case, was unavailable to be protective of the child, and had left S.O. without any provision for support.

Prior to the jurisdiction and disposition hearing, the department social worker met separately with father and mother.  Father admitted that he had "put his hands" on mother in the past but had "decided within himself" he would not do it again.  Father also stated that he and mother planned for S.O.'s birth, that he rubbed mother's hands and feet while she was pregnant, purchased prenatal vitamins for her, and otherwise cared for her before he was incarcerated.  The social worker discussed services that would be beneficial to address safety concerns.  The juvenile court subsequently authorized father to have supervised visitation with S.O. one day per week for one hour.

When mother met with the social worker, she stated that she "genuinely fears" father and that she was "running from him" when he was arrested and sent to prison for being a felon in possession of a firearm.  She explained that she believed father "intended to use that firearm to harm or kill her."  Mother provided the social worker with hundreds of text messages and dozens of voicemails that she had received from father while she

was pregnant. The social worker described the tone in the messages as a "cycle" ranging from father professing his "undying love" for mother, to calling her vulgar names, to threatening her, her loved ones, and his own life to gain mother's compliance. The social worker noted that as mother spoke about father, she had a "physical reaction" and was visibly shaking.

In July 2024, following a three-day, contested jurisdiction and disposition hearing, the juvenile court sustained the amended dependency petition, ordered S.O. removed from parents, and mother to be provided with reunification services. The juvenile court granted a restraining order after hearing protecting mother and S.O. from father. It also granted father's request to be designated a "biological father" but denied his request for services and placement after finding that contact with father would be detrimental to S.O.

*Subsequent Factual and Procedural Background*
*Following Appeal in B340698*

In January 2025, the juvenile court terminated the suitable placement order and ordered S.O. released to mother under a home of parent order with family maintenance services.

In February 2025, following a contested six-month review hearing, the juvenile court found father had sufficiently demonstrated his progress in treatment and lifted the detriment finding. It also allowed father supervised visitation with S.O. for one hour per month.

In July 2025, the department prepared a status review report and recommended the juvenile court terminate jurisdiction and issue a custody order. The department reported mother had completed her treatment program, was working to obtain her

4

GED, and continued to make progress toward ensuring S.O. remain in a safe and sober home.

On May 19, 2025, the department social worker spoke with father's probation officer who reported that father was compliant with probation and had only 10 days left. Father did not have any pending legal matters, however there remained an active restraining order protecting mother from father.

The social worker also spoke to father's Drug and Alcohol Services (DAS) counselor who reported that father had last tested on May 19, 2025, but had since stopped engaging with DAS.

Father had two visits with S.O., one on March 24, 2025, and one on April 28, 2025.

*Section 364 Hearing*

On July 17, 2025, the juvenile court conducted a review hearing pursuant to section 364 and considered terminating jurisdiction over S.O. with an exit order giving mother sole legal and physical custody and denying father all contact and visitation with S.O. Father requested a contested evidentiary hearing to challenge the juvenile court's proposed order. The juvenile court denied the hearing on the basis that father was a "mere biological" father and not a "presumed" father and therefore lacked standing.

*Discussion*

Father contends (1) he has standing to challenge the juvenile court's custody and visitation orders because he was "aggrieved" by the orders, and (2) the juvenile court abused its discretion in denying visitation without conducting an evidentiary hearing to determine S.O.'s best interests. We agree.

Whether a party has standing to appeal is a question of law. (*Bridgeman v. Allen* (2013) 219 Cal.App.4th 288, 292.) We

5

liberally construe the issue of standing and resolve doubts in favor of the right to appeal. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 948.)

"[O]nly a person aggrieved by a decision may appeal. . . . These rules apply with full force to appeals from dependency proceedings." (*In re K.C.* (2011) 52 Cal.4th 231, 236 (*K.C.*); *In re D.S.* (2007) 156 Cal.App.4th 671, 673-674; *In re Carissa G.* (1999) 76 Cal.App.4th 731,734.) "To be aggrieved or affected, a parent must have a legally cognizable interest that is affected injuriously by the juvenile court's decision." (*D.S.*, at p. 674; *Carissa G.*, at p. 736.) Thus, to determine whether a parent is aggrieved by a finding or order, we must identify the parent's interest in it.

"All parents, unless and until their parental rights are terminated, have an interest in their children's 'companionship, care, custody and management . . . .'" (*K.C.*, *supra*, 52 Cal.4th at p. 236.) "'This interest is a "compelling one, ranked among the most basic of civil rights."'" (*In re J.C.* (2014) 222 Cal.App.4th 1489, 1492-1493.)

Here, father remained a biological father with his parental rights intact and was also allowed visitation with S.O. from February 2025 to July 17, 2025, when the juvenile court terminated jurisdiction with an exit order denying father all future contact and visitation with S.O. As such, father has standing to have a hearing on custody and visitation orders and was aggrieved by the juvenile court's decision to deny the hearing.

Father was also prejudiced by the juvenile court's decision. Although he can seek modification of the visitation order in family law court, a family law court must defer to a recent order

of the dependency court concerning custody and visitation unless it finds a significant change of circumstances. (See *In re Michael W.* (1997) 54 Cal.App.4th 190, 192, 196 [presuming prejudice, and holding that "when requested, an evidentiary hearing must be held"]; see also *In re Armando L.* (2016) 1 Cal.App.5th 606, 619-621 [juvenile court abused discretion in denying evidentiary hearing on issues related to jurisdiction and exit orders]; *Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1164 ["before modifying the visitation schedule set forth in the Exit Order, the family court must find a significant change of circumstances that warrants that modification].) The juvenile court therefore abused its discretion when it denied father's request for a hearing.

*Disposition*

The juvenile courts orders, dated July 17, 2025, are reversed and the matter remanded for the juvenile court to conduct a contested section 364 hearing at which father may present evidence concerning his present circumstances, as well as S.O.'s best interests.

NOT TO BE PUBLISHED.


YEGAN, J., Acting P. J.


We concur:


CODY, J.


DEROIAN, J.*

---

* (Judge of the Sup. Ct. for Santa Barbara, assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.

Denise DeBelleFeuille, Judge

Superior Court County of San Luis Obispo

_____

Lori Siegel, under appointment by the Court of Appeal, for Objector and Appellant.

Jon Ansolabehere, County Counsel, Vincent M. Uberti, Deputy County Counsel, for Petitioner and Respondent.