Filed 4/14/26  In re N.D. CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Placer)

|  |  |
|---|---|
| In re N.D., a Person Coming Under the Juvenile Court Law. | C103426 |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br>        Plaintiff and Respondent,<br><br>v.<br><br>T.Z.,<br>        Defendant and Appellant. | (Super. Ct. No. 53-005621) |

Appellant T.Z., mother of the minor, appeals from the juvenile court's order granting the minor's section 388 petition for modification of mother's joint educational decision-making rights as to the minor.  (Welf. & Inst. Code, §§ 361, 366.21, 388, 395; statutory section references that follow are to the Welfare and Institutions Code.)  Mother also claims the juvenile court and the Placer County Department of Health and Human Services (Department) failed to comply with the inquiry and notice requirements of the Indian Child Welfare Act of 1978 (ICWA).  (25 U.S.C. § 1901 et seq.)

The Department argues both of mother's claims became moot when the minor reached the age of 18.  We agree mother's first claim as to the minor's section 388 petition is moot.  As for her second claim, we find mother has no standing to appeal from

the court's ICWA orders because the minor reached the age of majority and became a nonminor dependent. We therefore dismiss mother's appeal.

FACTS AND HISTORY OF THE PROCEEDINGS

Santa Barbara County Proceedings

This family came to the attention of the Santa Barbara Department of Social Services (Santa Barbara Department) in April 2024 when the minor, then age 16, ran away from mother's custody and refused to return due to ongoing physical and emotional abuse by mother. The minor left mother's home and traveled to Lompoc to stay with her adult sister, M.S., telling law enforcement officers and social services personnel she did not feel safe with her mother. The minor said she did not believe mother was capable of taking the mental health needs of the minor seriously and that being forced to return to mother's care made her feel like killing herself.

The Santa Barbara Department filed a dependency petition pursuant to section 300, subdivisions (b) and (c). On April 16, 2024, the juvenile court ordered the minor detained and appointed a special advocate (CASA) for the minor.

Placer County Proceedings

In May 2024, the Santa Barbara County juvenile court exercised dependency jurisdiction over the minor and ordered the matter transferred to Placer County, where mother resides.

The June 2024 disposition report stated mother held the rights to make medical and educational decisions for the minor and did not want the minor's caregiver (the minor's adult sister, M.S.) to have any medical or educational information about the minor. The minor did not want mother to continue to hold the decision-making rights for her, as mother had not adequately addressed her needs for some time. The Department recommended the juvenile court suspend mother's medical and educational decision-making rights and order the sole authority for those decisions be given to the caregiver.

2

At the July 2024 contested disposition hearing, the juvenile court adjudged the minor a dependent and found it was in her best interest to remain in out-of-home placement in the home of M.S. The court ordered mother's educational decision-making rights be shared jointly with the CASA and mother's medical and mental health decision-making rights be shared jointly with the Department.

Minor's Section 388 Petition to Modify

On August 14, 2024, the minor filed a section 388 petition to modify the juvenile court's order appointing mother and the CASA as joint educational decision-making rightsholders. The minor alleged mother enrolled her in in-person schooling against her wishes and against the advice of her therapist. In support of the petition, the minor attached a letter from her therapist, Daniel Mango, stating the minor was receiving mental health treatment and was suffering symptoms he expected to be "long-continuing" and to "substantially impede her ability to attend and learn in a public-school environment." Mango recommended the minor continue online independent study, not in-person schooling, to support her overall mental health and well-being. The minor alleged the requested modification was in her best interest because mother "is unable to work collaboratively with CASA and [the minor's] team to recognize and implement educational decisions that meet [the minor's] mental health and educational needs."

On March 21, 2025, after hearing testimony and argument, the court granted the minor's section 388 petition. Mother timely appealed the March 21, 2025, order.

The minor reached the age of majority in September 2025, during the pendency of this appeal. The Department's request for judicial notice establishing this fact, filed September 30, 2025, is hereby granted. (Evid. Code, §§ 452, 459.) The remainder of that combined motion, requesting augmentation of the record and dismissal of the entire appeal as moot is denied. As discussed below, we dismiss mother's challenge to the

court's section 388 petition order as moot but dismiss the ICWA claim for lack of standing.

DISCUSSION

I

*Minor's Section 388 Petition for Modification*

Mother contends the juvenile court abused its discretion in granting the minor's section 388 petition to modify mother's joint educational decision-making rights as to the minor and vest sole educational decision-making authority in the CASA, raising various challenges to the reasonableness of the court's decision and the court's compliance with mandatory procedures.

The Department argues mother's claim is moot because the minor reached the age of majority during the pendency of this appeal. We agree. A parent's interest in their child's companionship, care, custody, and management in juvenile dependency proceedings terminates when the child reaches the age of 18 years, at which point the child, now considered a young adult, is entitled to make independent decisions in conducting her own affairs. (See *In re Devin M.* (1997) 58 Cal.App.4th 1538, 1541; see also *In re J.C.* (2014) 222 Cal.App.4th 1489, 1492 [unless and until parental rights are terminated, all parents "have an interest in their children's 'companionship, care, custody and management . . . .' [Citation.]"].) That interest terminates when the child reaches 18 years of age, at which point, " 'the law treats the young adult as a responsible person entitled to make independent decisions in conducting his or her affairs.' [Citation.]" (*Id.* at p. 1493.)

Here, the minor turned 18 after the juvenile court granted her section 388 petition suspending mother's joint educational decision-making rights as to the minor and vesting sole decision-making rights in the CASA. Mother effectively concedes the issue, stating reversal and remand are only required "if resolved before the minor turns 18." Having

4

turned 18 to become a nonminor dependent, the minor then retained "all of [her] legal decision-making authority as an adult." (§ 303, subd. (d)(1).) As such, mother's claim is moot.

## II

### *ICWA Compliance*

Mother also contends the juvenile court failed to ensure the Department complied with its mandatory duty of ICWA inquiry and therefore the juvenile court's finding that the ICWA does not apply is not supported by the evidence. Specifically, mother claims the Department provided ICWA notice to only one Sioux tribe, the Oglala Sioux Tribe, but failed to provide such notice to four other federally recognized Lakota Sioux affiliated tribes: the Cheyenne River Sioux Tribe of the Cheyenne River Reservation, South Dakota; the Lower Brule Sioux Tribe of the Lower Brule Reservation, South Dakota; the Rosebud Sioux Tribe of the Rosebud Indian Reservation, South Dakota; and the Standing Rock Sioux Tribe of North and South Dakota. Mother further claims reversal and remand are required notwithstanding that the minor turned 18 years old during the course of the dependency proceedings.

### Background

The Santa Barbara Department reported mother claimed possible Indian ancestry with the Zuni Tribe in New Mexico and the Lakota Tribe in South Dakota; the minor's sister M.S. claimed possible Indian ancestry with the Blackfoot Tribe, but the minor gave no other reason to believe she is or may be an Indian child. On May 23, 2024, mother completed a parental notification of Indian status (ICWA-020) indicating she had no known Indian ancestry.

After the case was transferred to Placer County, the Department reported the ICWA inquiry efforts undertaken by the Santa Barbara Department and continued to inquire about possible Indian ancestry. On June 21, 2024, the Department sent notices of

child custody proceedings (ICWA-030) containing information about mother and the name and birthdate of father to the Bureau of Indian Affairs (BIA), the Blackfeet Tribe of the Blackfeet Indian Reservation of Montana, the Cherokee Nation, the Eastern Band of Cherokee Indians, the Oglala Sioux Tribe, the United Keetoowah Band of Cherokee Indians in Oklahoma, and the Zuni Tribe of the Zuni Reservation, New Mexico. The juvenile court found there was reason to believe the ICWA may apply and ordered the Department to undertake further inquiry.

On August 23, 2024, the Department filed a report setting forth responses received from the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee Indians in Oklahoma, and the Zuni Tribe of the Zuni Reservation, New Mexico stating the minor was neither enrolled nor eligible for enrollment and the respective tribes would therefore not intervene in the dependency proceedings. The Department had not received responses from the remaining three noticed tribes within the 60-day response period.

In January 2025, the Department reiterated its previous ICWA inquiry efforts, including the ICWA-030 notices sent to the six tribes and the responses received from three of those six tribes, and included new information regarding inquiry of the minor's two adult sisters, M.S. and T.M., both of whom had no additional information regarding possible Indian heritage. Later that month, the Department provided the juvenile court with the Blackfeet Tribe's response to the ICWA-030 stating the minor was neither enrolled nor eligible for enrollment and the tribe would therefore not intervene in the dependency proceedings.

On March 21, 2025, the juvenile court found the ICWA does not apply.

Law

"The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under

Section 300, 601, or 602 may be or has been filed, is or may be an Indian child."
(§ 224.2, subd. (a).)

"An ' "Indian child" ' is 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4); see § 224.1, subd. (a) [adopting federal definition].)" (*In re N.F.* (2023) 95 Cal.App.5th 170, 176; § 224.1, subd. (b)(1).) "As used in connection with an Indian child custody proceeding, as defined in subdivision (d), brought in a juvenile court, the term 'Indian child' also means an unmarried person who is 18 years of age or over, but under 21 years of age [a nonminor dependent], who is a member or citizen of an Indian tribe or eligible for membership or citizenship in an Indian tribe and is the biological child of a member or citizen of an Indian tribe, and who is under the jurisdiction of the juvenile court, . . . ." (§ 224.1, subd. (b)(2).)

Mootness

The Department concedes it failed to provide informal ICWA notices to the Cheyenne River Sioux Tribe of the Cheyenne River Reservation, South Dakota; the Lower Brule Sioux Tribe of the Lower Brule Reservation, South Dakota; the Rosebud Sioux Tribe of the Rosebud Indian Reservation, South Dakota; and the Standing Rock Sioux Tribe of North and South Dakota, but asserts that any error is moot given that the minor reached the age of majority during the pendency of this appeal.

The Department argues both the federal and California definitions of "Indian child" are inapplicable to the minor, despite California's definition including "nonminor dependents." The Department asserts the duty of ICWA inquiry and further inquiry only applies to a "child" who is or may be an "Indian child," and California Rules of Court, rule 5.502, defines "child" as "a person under the age of 18 years." (Cal. Rules of Court, rule 5.502(5); further rule references are to the California Rules of Court.) The

7

Department acknowledges rule 5.502 also defines "Indian child" as "any unmarried person under 18 years of age who is either (a) a member of an Indian tribe or (b) eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe," *and* "a youth who satisfies the conditions in either (a) or (b), . . . is 18 years of age but not yet 21 years of age, and remains under the jurisdiction of the juvenile court, . . . ." (Rule 5.502(19).) However, the Department argues section 224.2 and rule 5.481 require that the ICWA duty of inquiry into whether a minor is or may be an "Indian child" is required only if it is first determined that the minor falls within the definition of "child" as defined by rule 5.502(5) (i.e., the minor is under 18 years of age). Because the minor here has reached the age of majority, it argues, the minor is not a "child" within the prescribed definition and therefore there is no duty of inquiry or further inquiry in connection with any nonminor dependent proceedings. We disagree.

The Department's strained interpretation of the various statutes and rules ignores the maxim of statutory construction that we look to the entire statutory scheme and " ' " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " ' [Citation.]" (*People v. Warren* (2018) 24 Cal.App.5th 899, 908.) Here, the statutory language of section 224.1, subd. (b)(2), is unambiguous in its inclusion of a nonminor dependent as an "Indian child." Consistent therewith is rule 5.502(19), which by its plain meaning is intended to apply to ICWA-related matters. When statutory language is unambiguous, we generally adopt the plain meaning of the statute. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 45.) We do so here and conclude the ICWA still applies to the minor as a nonminor dependent. Therefore, the ICWA issue is not moot. We conclude, however, that mother lacks standing to raise the ICWA issue on behalf of the minor.

8

<u>Lack</u> <u>of</u> <u>Standing</u>

Unlike mootness, "[t]here is no general 'public interest' exception to the requirement of standing." (*People ex rel. Becerra v. Superior Court* (2018) 29 Cal.App.5th 486, 497.) "Whether a person has standing to raise a particular issue on appeal depends upon whether the person's rights were injuriously affected by the judgment or order appealed from. [Citation.] A person does not have standing to urge errors on appeal that affect only the interests of others. [Citation.] Accordingly, a parent is precluded from raising issues on appeal which do not affect his or her own rights." (*In re A.K.* (2017) 12 Cal.App.5th 492, 499; see *In re J.C., supra,* 222 Cal.App.4th at p. 1492.) Where, as here, the facts are not in dispute, we review a question of standing de novo. (*Brewer v. Superior Court* (2017) 16 Cal.App.5th 1019, 1023, quoting *People v. Koury* (1989) 214 Cal.App.3d 676, 685.)

As discussed above in part I of this opinion, in dependency proceedings, a parent's interest is in reunification and in maintaining a parent-child relationship. (See *In re Devin M., supra,* 58 Cal.App.4th at p. 1541; see also *In re J.C., supra,* 222 Cal.App.4th at p. 1492.) That interest terminates when the child reaches 18 years of age, at which point " 'the law treats the young adult as a responsible person entitled to make independent decisions in conducting his or her affairs.' [Citation.]" (*In re J.C.,* at p. 1493.)

Here, the minor turned 18 years old after the juvenile court's ICWA ruling but while the dependency proceedings were ongoing. She was (and is) a nonminor dependent unless and until she turns 21 years of age *or she chooses not to remain under the court's jurisdiction*. (*In re J.C., supra,* 222 Cal.App.4th at p. 1493; *In re Holly H.* (2002) 104 Cal.App.4th 1324, 1336-1337.) She has not chosen to do so. She may choose to challenge the court's ICWA rulings on her own behalf but there is no indication in the record that she has done so.

9

Mother's challenge to the juvenile court's ICWA rulings is in her capacity as a parent to the minor. The minor became a nonminor dependent, independent of mother's custody and control, during the course of the dependency proceedings. The court thereafter continued to exercise jurisdiction over the minor as a nonminor dependent. Mother therefore does not have standing to pursue her claim regarding the court's ICWA ruling. (*In re J.C., supra,* 222 Cal.App.4th at p. 1494.)

Citing *In re Dezi C.* (2024) 16 Cal.5th 1112, 25 C.F.R. § 23.103(d), and several provisions of the Federal Register, mother argues federal and state law both provide that ICWA does not cease to apply to a dependency proceeding simply because a child turns 18 years old. We do not disagree. However, mother erroneously conflates that well-established law with the proposition that because the ICWA still applies after the child turns 18 and the *child has standing* to raise an ICWA claim, the parent also has standing to raise an ICWA claim on the child's behalf. None of the authorities mother relies on hold that the *applicability* of the ICWA, in and of itself, confers standing on the parent of a nonminor dependent to pursue ICWA concerns. She provides no authority supporting her conclusion that, despite the minor reaching the age of majority, mother has standing to pursue ICWA violations for the benefit of herself, the nonminor dependent, the tribes, or the public interest. Where, as here, mother lacks standing to raise her claim of error, that " ' "lack of standing" is a jurisdictional defect.' " (*People ex rel. Becerra v. Superior Court, supra,* 29 Cal.App.5th at p. 496.) Thus, we will dismiss mother's claim of ICWA error.

DISPOSITION

The appeal is dismissed.

_/s/_ _____
HULL, J.

We concur:

_/s/_ _____
EARL, P. J.

_/s/_ _____
FEINBERG, J.